Paula L. Zecchini (SBN No. 238731)
Nathan Dooley (SBN No. 224331)
Jeffrey M. Monhait (*pro hac vice* to be submitted)
COZEN O'CONNOR
101 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 644-0914
Facsimile: (415) 644-0978
E-mail:      pzecchini@cozen.com
             ndooley@cozen.com
             jmonhait@cozen.com

Attorneys for Plaintiff
GO DADDY OPERATING COMPANY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GO DADDY OPERATING COMPANY, LLC, | Case No.: _____ |
| Plaintiffs, | |
| vs. | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| USMAN GHAZNAVI a/k/a USMAN ANIS, SALMAN GHAZNAVI a/k/a SALMAN ANIS, SILICON VALLEY GRAPHIC, LLC d/b/a SILICON VALLEY GRAPHICS, and DOES 1 through 50, | DEMAND FOR JURY TRIAL |
| Defendant(s). | |

1.    Plaintiff Go Daddy Operating Company, LLC ( "GoDaddy") brings this action against Defendants Usman Ghaznavi a/k/a Usman Anis ("Anis"), Salman Ghaznavi a/k/a Salman Anis ("Ghaznavi"), Silicon Valley Graphic, LLC d/b/a Silicon Valley Graphics ("SVG"), and Does 1 through 50 (collectively, "Defendants") for injunctive relief and damages arising from the unauthorized use of GoDaddy's trademarks, as follows:

## NATURE OF ACTION

2.    GoDaddy is the world's largest domain name registrar.  In addition to providing domain registration services, GoDaddy offers over fifty (50) other online products and services to the public, including, as relevant here, website design, website development, and online marketing services.

3.    GoDaddy recently learned that Defendants are unlawfully utilizing GoDaddy's protected trademarks to sell their own logo design, business design, and website design services—the very same services that GoDaddy offers.

4.    Defendants are contacting GoDaddy customers and other unsuspecting consumers with unsolicited email communications, SMS text messages, and fax messages that falsely represent a relationship with GoDaddy, all under the guise of assisting GoDaddy customers with developing their newly registered domain names. Defendants have even gone so far as to advise inquiring consumers that they are a subsidiary of GoDaddy.

5.    To be clear, GoDaddy does not currently have, nor has it ever had, a business relationship with Defendants; all representations to the contrary are false.

6.    Upon information and belief, GoDaddy is only the latest in a string of trademark holders to have their intellectual property misappropriated by Defendants and put to use in fraudulent marketing campaigns.  Over the course of the last five (5) years, Defendants and their associated businesses developed notoriety for operating a ring of businesses purportedly engaged in application development, logo design, and website design.

7. A 2014 investigative report published by Android Police, a "blog dedicated to everything related to Android,"[1] placed a spotlight on the business practices of Anis and Ghaznavi, highlighting practices that, if true, are dubious at best, and fraudulent at worst. A complete and accurate copy of this report is attached hereto as Exhibit A. The article is replete with allegations relating to Defendants' sham business practices and misappropriation of intellectual property ("IP") across a number of Defendants' businesses. Defendants are also the subject of numerous complaints to the Better Business Bureau, and a brief search on the website that resolves from the domain name, ripoffreport.com, revealed numerous complaints about Defendants and their business practices. A selection of these complaints is attached hereto as Exhibit B.

8. GoDaddy brings this lawsuit in order to halt and seek redress for Defendants' continued unlawful conduct, and to stem the consumer confusion by which such conduct was originally brought to GoDaddy's attention. Specifically, GoDaddy brings claims for violations of §§ 32 and 43 of the Lanham Act, 15 U.S.C. § 1114 (Trademark Infringement), § 1125(a) (False Designation of Origin, Unfair Competition/False Advertising), § 1125(c) (Trademark Dilution), and § 1125(d) (Cybersquatting); violations of California Business and Professions Code §§ 17200 and 17500; and violations of California common law.

## PARTIES

9. GoDaddy is a limited liability company organized and existing under the laws of the State of Delaware, and has its principal place of business in Scottsdale, Arizona.

10. Upon information and belief, defendant Usman Ghaznavi a/k/a Usman Anis ("Anis") is a California resident. As detailed more fully below, he owns, operates, and/or controls numerous corporate entities located in Alameda County, California, at 45333 Fremont Blvd, Suite 5, Fremont, California 94538 (the "Fremont

---

[1] "About," Android Police, available at http://www.androidpolice.com/about/ (last accessed October 31, 2017).

Address"), and in Santa Clara County, California, at 440 North Wolfe Road, MS# 142, Sunnyvale, California 94085 (the "Sunnyvale Address").   He has also represented these addresses as his own in corporate filings with the California Secretary of State.

11.    Upon information and belief, defendant Salman Ghaznavi a/k/a Salman Anis ("Ghaznavi"), is a California resident.   As detailed below, he is involved in numerous corporate entities located in Alameda County, California, at the Fremont Address, and in Santa Clara County, California, at the Sunnyvale Address.

12.    Upon information and belief, defendant SVG is a limited liability corporation organized and existing under the laws of the State of California, and has its principal place of business in Alameda County, California, at the Fremont Address. Anis owns, operates, and/or controls SVG.  An individual identified as Waqar Ahmed is SVG's agent for service of process, at the Fremont Address.

13.    GoDaddy is unaware of the true names of the other Defendants sued herein as Does 1 through 50, inclusive, and therefore sues these Doe Defendants by such fictitious names.  GoDaddy will amend this Complaint to allege the true names and capacities of these Doe Defendants when ascertained.  GoDaddy is informed and believes and, on that basis, alleges that each such fictitiously named Doe Defendant is responsible in some manner for the damages alleged herein and that GoDaddy's losses and damages were proximately caused by such conduct.

14.    GoDaddy is also informed and believes and, on that basis, alleges that at all relevant times mentioned herein, the named Defendants and the Doe Defendants, and each of them, were the agents, employees, and representatives of each other and acted within the scope and course of that agency, employment, and/or other such relationship, and authorized, approved, and/or ratified the conduct alleged herein.  For purposes of this Complaint, the term "Defendants" shall collectively refer to the named Defendants and the Doe Defendants.

///

## JURISDICTION

15.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. §§ 1116 and 1125, and 28 U.S.C. § 1367.

16.    Venue lies within this district because a substantial part of the events giving rise to these claims occurred in this district and Defendants reside in this judicial district for purposes for 28 U.S.C. § 1391(b) and (c).

17.    This action arises in Alameda County because a substantial part of the events giving rise to the claim occurred in Alameda County.   This action is an intellectual property action subject to district-wide assignment pursuant to Civil Local Rule 3-2(c).

## FACTUAL ALLEGATIONS

**A.    GoDaddy's Business and Intellectual Property**

18.    GoDaddy is the world's largest domain name registrar with nearly 73 million domain names under management and more than 17 million customers worldwide.   GoDaddy operates its business primarily through its subsidiary GoDaddy.com, LLC, which operates a website located at www.godaddy.com (the "GoDaddy Site").

19.    As a domain name registrar, GoDaddy is responsible for managing the reservation of Internet domain names registered through it by members of the public. A domain name registrar must be accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"), as well as the domain name registries for generic top level domains (gTLDs), such as .COM and .NET.   As relevant here, ICANN maintains a public domain name registry, known as WHOIS, that contains contact information for all domain name registrants who register a .COM or .NET domain name.   Registrants are required to provide contact information to WHOIS as part of the domain name registration process.

20.    In addition to domain registration services, GoDaddy offers customers a host of additional services to facilitate customers' uses of their domains.   As relevant

to the instant action, these services include website design, logo design, and business design services:

a.      GoDaddy's website design services include simple and accessible instructions to assist customers in designing their websites.  GoDaddy offers customers a user interface that allows customers to quickly and easily develop a customized website with features suited to their needs.  For customers who want more assistance with the website design process, GoDaddy offers expert services, whereby GoDaddy creates, hosts, and updates a custom website for a customer.  GoDaddy works closely with these customers to learn about their businesses, and develop a website best suited for their needs.

b.      GoDaddy's business development services assist customers in numerous ways, such as by creating a Facebook account linked to the customer's website, optimizing a customer's website for popular internet search engines, and assisting customers with developing email marketing campaigns.

c.      GoDaddy's logo design services also involve close consultation with customers.  GoDaddy works with each customer to learn about the customer's business, style, and design preferences, then develops a customized logo for the customer.  These services all serve as a logical next step for customers after registering a domain name with GoDaddy.

21.    GoDaddy owns the GODADDY marks (the "GoDaddy Marks"), including, but not limited to, United States Trademark Registration Numbers 4526948 and 4472643.  GoDaddy has also developed significant common law rights in the GODADDY trade name (the "GoDaddy Name") in connection with its products and services.  Since first acquiring rights in the GoDaddy Marks, GoDaddy has invested significant resources in building and developing good will and value associated with the GoDaddy Marks, and consumers across the globe associate these famous marks with GoDaddy and its products and services.

///

22.    GoDaddy is the owner of all rights in the GoDaddy Marks, which include, but are not limited to, the service marks that are the subject of the following United States Trademark Registrations:

| REGISTRATION NUMBER | SERVICE MARK | SERVICES |
| --- | --- | --- |
| 4,549,193 |  | Increasing traffic flow to websites on the Internet, namely, promoting the goods and services of others by providing automated hypertext links to the websites of others using optimal search terms and search engines; Domain monetization services for others; Advertising services, namely, creating corporate and brand identity for others; Providing business management information on a wide variety of topics to service professionals; Providing business management consulting services, International Category 35.<br><br>Designing, developing and hosting web sites for others on a global computer network; Design services for others, namely, design services in the nature of graphic design services for creating corporate logos; Global computer system domain name |

| | | |
|---|---|---|
| | | searching services, namely, conducting computer searches for the availability of domain names and a list of expired domain names, International Category 42.<br><br>Providing user authentication service in e-commerce transactions on a global computer network; Computer services, namely, registering previously registered domain names by registering the domain names when the domain names become publicly available; Computer services, namely, registering domain names for use on a global computer network; Online social networking services, International Category 45. |
| 4,526,948 | GODADDY | Clothing, namely, men's and women's t-shirts, caps and hats, International Category 25. |
| 4,472,643 | GODADDY | [same as 4,549,193, above] |
| 4,472,631 |  | [same as 4,549,193, above] |

| 4,517,021 |  | [same as 4,549,193, above] |
|---|---|---|
| 3,672,975 |  | Computer programs, namely, programs for creating, posting and maintaining websites on the global computer network; Computer graphics software, computer authoring software, and digitized graphics modules for designing and developing web sites on a global computer network; Computer software provided by means of a global computer network which assists a user in creating customized forms; Computer search engine software for enhancing search engine capabilities and increasing Internet traffic to web site; Computer programs, namely, for developing and displaying an interactive electronic storefront on a global network, for adding and managing a catalog of products for selling on a global network, for processing payment calculation and collection over a global network, and for generating reports of web site activity for a designated site on a |

| | | |
|---|---|---|
| | | global network; Computer programs to assist others in marketing their businesses through the creation of targeted email campaigns, International Category 9.<br><br>Increasing traffic flow to websites on the Internet, namely, promoting the goods and services of others by providing automated hypertext links to the websites of others using optimal search terms and search engines; Domain monetization services for others; Advertising services, namely, creating corporate and brand identity for others, International Category 35. |
| 3,672,972 | GODADDY.COM | [same as 3,672,975, above] |

**B.   Misappropriation and Unlawful use of the GoDaddy Marks by Defendants**

23.   Over the course of the last fifteen months, Defendants launched a campaign of IP misuse and misappropriation aimed at siphoning traffic from GoDaddy's websites and profiting from the GoDaddy Marks.  Defendants registered, operated, and continue to own and operate more than thirty internet domain names (the "Infringing Domains") that are identical to, or confusingly similar to and dilutive of, the GoDaddy Marks and the GoDaddy Site.  GoDaddy has not been able to prepare a complete inventory of the Infringing Domains because ongoing research continues

to yield more such domains and Defendants are continuing to register new domains. At the time of filing of this Complaint, the Infringing Domains include, but are not limited to:

a.  g0daddydesigns.com

b.  godaddydesigns.com

c.  go-daddydesigns.com

d.  godesigndaddy.com

e.  godaddybrandagency.com

f.  godaddybranddesign.com

g.  godaddybranding.com

h.  godaddydesignagency.com

i.  godaddydesigners.com

j.  godaddydesignhub.com

k.  godaddydesignservice.com

l.  godaddydesignsolution.com

m.  godaddydomaindesigns.com

n.  godaddyexplainervideos.com

o.  godaddygraphicdesigns.com

p.  godaddyhostingdesign.com

q.  godaddyhostingdesigns.com

r.  godaddylogodesigns.com

s.  godaddylogosonline.com

t.  godaddymarketingagency.com

u.  godaddypremiumdesigners.com

v.  godaddypremiumdesigns.com

w.  godaddypremiums.com

x.  godaddyprivacy.com

y.  godaddywebcoupon.com

1       z.      godaddywebsitecoupon.com

2       aa.     godaddywebdesign.com

3       bb.     godaddywebdesigns.com

4       cc.     godaddydesigncoupons.com

5       dd.     godaddyanimations.com

6       ee.     logodesigndaddy.com

7       ff.     logodesignsdaddy.com

8       gg.     logodaddycoupon.com

24.    On information and belief, most of the Infringing Domains utilize a domain name privacy service to ensure that Defendants' corporate contact information is not publicly available.  A domain name privacy service provider offers customers the ability to keep their information private when they register their domain name by displaying the provider's contact information in the WHOIS database instead of the domain name registrant's contact information.  In the instant action, many of the infringing domains utilize the domain name privacy services of Domain Protected Services, Inc.

25.    Upon information and belief, prior to utilizing a domain name privacy service, Defendants registered an alias, Fedrick King ("King"), as the owner and contact for many of the Infringing Domains.  For example, as of July 2017, the registrant information for g0daddydesigns.com was: Fedrick King, 45333 Fremint [sic] Blvd. STE 5, Fremont, California, 94538, fedrickking1@gmail.com.  Defendants have since moved the registration for this domain and a number of the other Infringing Domains to a domain name privacy service.  As of the filing of this Complaint, the domains, www.godesigndaddy.com and www.go-daddydesigns.com, continue to publicly identify King as the domain registrant.  To date, GoDaddy's investigation has uncovered no record of a Fedrick King, other than records of his purported ownership of domain names, including many of the infringing domains.

///

26.     Despite recent efforts to conceal their ownership of the Infringing Domains, GoDaddy was able to determine that Defendants acknowledge and maintain ownership of at least one of the infringing domains.  According the WHOIS database, the domain godaddywebdesigns.com utilizes WhoIsGuard, Inc.'s ("WhoIsGuard") domain name privacy services.  Upon inquiry, WhoIsGuard disclosed that Ghaznavi is the registered owner of the domain and that the contact information associated with the domain name lists the Fremont Address.  The registered company for the domain is Silicon Networks LLC, and the registered email is networks@brandedlogodesigns.com.  As explained further below, Branded Logo Designs is another of Defendants' businesses.

27.     As explained more fully below, Defendants also registered six of the Infringing Domains (go-daddydesigns.com, g0daddydesigns.com, godesigndaddy.com, godaddydesigncoupons.com, logodesigndaddy.com, and logodesignsdaddy.com) through two accounts that they maintained with GoDaddy.

**C.     Logo and Website Design Businesses Operated by Defendants**

28.     In addition to SVG and the website design businesses resolving from the Infringing Domains, Defendants have a broad business portfolio of companies intimately tied to the Fremont and Sunnyvale Addresses.  These businesses include, but are not limited to:

a.     AppDesignAgency, LLC, d/b/a Avenue Social, LLC ("Avenue Social"): on information and belief, Avenue Social is a limited liability corporation organized and existing under the laws of the State of California, with its principal place of business in Santa Clara County, California, at the Sunnyvale Address.  Avenue Social's Articles of Incorporation, dated March 5, 2014, are signed by Ghaznavi as Avenue Social's President, and by Anis as its Secretary.  *See* Exhibit C.  These Articles further identify Waqar Khan, located at the Sunnyvale Address, as Avenue Social's agent for service of process.

Ghaznavi has also held himself out as Avenue Social's Chief Executive Officer in marketing videos.

b.      BrandedLogoDesigns, Inc. ("Branded Logo"): on information and belief, Branded Logo is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Santa Clara County, California, at the Sunnyvale Address.  The entity details for Branded Logo on the website for the Secretary of State for the State of Nevada identify Anis as Branded Logo's President, Secretary, Treasurer, and Director, and identify his address as the Sunnyvale Address.  *See* Exhibit D.

c.      SocialJitney, Inc. ("Social Jitney"): on information and belief, Social Jitney is a now-dissolved corporation that was previously organized and existing under the laws of the State of Nevada, with its principal place of business in Santa Clara County, California, at the Sunnyvale Address.  The entity details for Social Jitney on the website for the Secretary of State for the State of Nevada identify Anis as Social Jitney's President, Secretary, Treasurer, and Director, and identify his address as the Sunnyvale Address.  *See* Exhibit E.

d.      Appbury, Inc. ("Appbury"): on information and belief, Appbury, is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Santa Clara County, California, at the Sunnyvale Address.  The entity details for Appbury on the website for the Secretary of State for the State of Nevada identify Anis as Appbury's President, Secretary, Treasurer, and Director, and identify his address as the Sunnyvale Address.  *See* Exhibit F.

e.      VideoJeeves, Inc. ("Video Jeeves"): on information and belief, Video Jeeves, is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Alameda County, California, at the Fremont Address.  The entity details for Video Jeeves on the website for the Secretary of State for the State of Nevada identify Anis as Video

Jeeves's President, Secretary, Treasurer, and Director, and identify his address as the Fremont Address. *See* Exhibit G. An online profile for Ghaznavi on a website run by VB Profiles[2] identifies Ghaznavi as Appbury's Chief Executive Officer. *See* Exhibit H. Video Jeeves's website, accessible at www.videojeeves.com, identifies its telephone number as (877) 326-0221 (the "877 Number").

f. iTech Devices, Inc. ("iTech"): on information and belief, iTech is a corporation organized and existing under the laws of the State of California, with its principal place of business in Alameda County, California, at the Fremont Address. iTech's Statement of Information dated July 7, 2015, identifies Anis as iTech's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and as a Director, and identifies his address as the Fremont Address. *See* Exhibit I. This document further identifies Ghaznavi as iTech's Secretary, located at the Fremont Address, and identifies Waqar Khan, located at the Fremont Address, as iTech's agent for service of process. *See id.* Previous filings had identified Ghaznavi as iTech's President, and Anis as its Secretary. *See* Exhibit J, Certificate of Amendment of Articles of Incorporation.

g. Blitz Design, Inc. ("Blitz"): on information and belief, Blitz is a corporation organized and existing under the laws of the State of California, with its principal place of business in Alameda County, California, at the Fremont Address. Blitz's Statement of Information dated March 27, 2017, lists Anis as Blitz's CEO, CFO, Secretary, and only Director, and identifies his address as the Fremont Address. *See* Exhibit K. The document describes Blitz's business as "brand and logo design." *See id.* On its website,

---

[2] VB Profiles describes itself as "a partnership between Spoke Intelligence and VentureBeat . . . [and a] source for timely, relevant and comprehensive information on industries, industry trends, companies and people." "About VB Profiles," VB Profiles, available at https://www.vbprofiles.com/about (last accessed October 31, 2017).

http://blitzdesign.ae/about.html, Blitz advertises its United States address as the Fremont Address, and its telephone number as (800) 589-2951 (the "800 Number").  A screenshot of this website, displaying this contact information, is attached hereto as Exhibit L.

h.  Silicon Graphics: according to information provided on its website, located at www.silicongraphics.ae/about.html, Silicon Graphics ("SG") is "a subsidiary of Silicon Valley Graphic," that "was created as a digital agency to provide Web Development services with a primary focus on Digital Marketing."  It invites customers to contact it at the 800 Number.  A screenshot of the contact information displayed on the website, is attached hereto as Exhibit M.

i.  Logo Jeeves, Ltd. ("Logo Jeeves"): upon information and belief, Logo Jeeves is a Private Limited Company organized under the laws of the United Kingdom.  Its Certificate of Incorporation identifies Waqar Khan as its sole director.  Its website, www.logojeeves.com, identifies the 800 Number as its telephone number, and the Sunnyvale Address as its address.  A screenshot of the contact information displayed on the website, is attached hereto as Exhibit N.

j.  Logo Bench Inc. ("Logo Bench"): upon information and belief, Logo Bench is either an unincorporated entity, or it is unknown under what state or country's laws Logo Bench is organized, and Logo Bench's principal place of business at the Sunnyvale address.  Anis advertises himself as "Director – Program Management at Logo Bench," and describes Logo Bench as "a company focused on graphics development, social media marketing, design & development."  *See* Exhibit O.  Logo Bench's website, accessible at www.logobench.com, identifies its contact number as (877) 326-0220, nearly identical to the 877 Number.

*///*

k.  <u>Salsoft Technologies (Pvt) Ltd. ("Salsoft")</u>: upon information and belief, Salsoft is a private limited company organized under the laws of Pakistan, with its principal place of business in Karachi, Pakistan.  Salsoft's website, located at www.salsoft.net, states that Ghaznavi established it in 2000, and identifies iTech as one of Salsoft's partners.  Images printed from Salsoft's website are attached as Exhibit P.

29.   As explained further below, the commonalities between these businesses, the Infringing Domains, and the associated websites, demonstrate that they are part of a common scheme operated, executed, and controlled by Defendants.   These commonalities include, but are not limited to, the physical addresses (the Fremont Address and Sunnyvale Address), the references and links to Defendants' businesses in the websites accessed from the Infringing Domains, the common designs of the websites associated with Defendants' businesses and the Infringing Domains, and the use of the same telephone numbers in advertisements.

**D.   GoDaddy Discovers Defendants' Use of the Infringing Domains**

30.   In July 2017, a customer notified GoDaddy of an email the customer had received from Defendants that purported to be "From: GoDaddy," and "On Behalf Of GoDaddy," but was sent by an entity calling itself GoDaddy Designs (the "GoDaddy Designs Email").   The GoDaddy Designs Email identified the domain name associated with GoDaddy Designs as g0daddydesigns.com.  *See* Exhibit Q.   This advertisement further identified the 800 Number as the entity's telephone number, and contained a footer that stated, "99designs, 440 N Wolfe Road, Sunnyvale, CA 94085."

31.   The GoDaddy Designs Email stated, in part, "Hey customer, The next logical step for [the customer's domain name] is to grab a Logo that can have a powerful impact on your users.  Avail [sic] your Early Bird Voucher and enjoy up to 77 PERCENT OFF on your Logo and Website design work.  Voucher is valid for Today only.  ACTIVATE YOUR DISCOUNT VOUCHER (Expires in 24Hrs) And start your project today . . . ."

32.     In investigating the origins of the GoDaddy Designs Email, GoDaddy discovered that the domain was hosted by GoDaddy, on an account paid for by Anis, and registered to the Fremont Address.  The identity of the registrant associated with the domain was Defendants' alias, Fedrick King, at the Fremont Address.   The Fremont Address was also utilized as the contact address and billing address for the account, the contact email address for the account was network@salsoft.net, and Anis paid for the products and services purchased on this account using a credit card linked to the Fremont Address.  Furthermore, g0daddydesigns.com resolved to an IP address[3] registered to Anis at the Fremont Address. After determining that the website resolving from g0daddydesigns.com was improperly utilizing GoDaddy's trademarks in violation of GoDaddy's Uniform Terms of Service Agreement ("UTOS"), GoDaddy suspended the site and terminated the GoDaddy account.   GoDaddy continued to investigate this account, and found that it also registered, or had previously registered, four additional Infringing Domains (go-daddydesigns.com, godesigndaddy.com, logodesignsdaddy.com, and logodaddycoupon.com), as well as a domain associated with Defendants' related businesses, brandedlogosdesign.com.

33.     GoDaddy's investigation of g0daddydesigns.com and Defendants' account revealed that Defendants held a second GoDaddy account.   The second account utilized the Sunnyvale Address as the contact address and billing address for the account, and Anis paid for the products and services purchased on that account with the same credit card associated with the account related to g0daddydesigns.com. This account utilized a Logo Bench contact email, tim.morgan@logobench.com, and provided a telephone number ((877) 628-3056) that, when entered into an internet search engine, such as Google, revealed that the same contact number appeared on social media profile pages for Social Jitney and Branded Logo.  This account also registered,   or   had   previously   registered,   two   Infringing   Domains (godaddydesigncoupons.com and logodesigndaddy.com), as well as the domain that

---

[3] An IP address (also known as an Internet Protocol address) is a numerical label that identifies a computer or device connected to a computer network.

resolved to SVG's website, svgprint.com, and two additional domains associated with Defendants' related businesses, logojeeves.co.uk and appdesignagency.com. GoDaddy terminated this account for the same reasons it terminated Defendants' other GoDaddy account.

34.   The discovery of the Infringing Domains also shed light on their relation to a spam campaign involving the domain name route66d.com ("Route 66").  The Route 66 spam campaign first came to GoDaddy's attention in the summer of 2016 after it received a number of customer complaints about text messages that appeared to be from GoDaddy.  As set forth in the customer alert that GoDaddy was ultimately compelled to post on its website: "The messages (pictured below) are actually from a 'logo deal' spammer.  GoDaddy has neither provided nor shared any customer data with them.  Instead, they pulled contact information from the public WHOIS database. Text messages were then generated by the website http://www.route66d.com, which, as of September 20, 2016, was registered through Enom and hosted by HostGator (50.87.144.209)."  The website to which GoDaddy customers were directed utilized and prominently displayed GoDaddy's trademarks:



*See* Exhibit R.

///

35.    The Route 66 spam campaign was relentless, spawning a large number of customer complaints and threats of litigation from customers who believed they had received the messages from GoDaddy.  It was also identical in nature to another spam campaign during the same time period that directed GoDaddy customers to a website at www.theamericandesigns.com ("American Designs").    Both Route 66 and American Designs operated identical websites that utilized the GoDaddy Marks in connection with the sale of their logo and website design business without GoDaddy's consent and in a manner that caused actual confusion.

36.    Upon receipt of two separate cease and desist letters, WhoisGuard disclosed that a Rizwan Ali, of Pakistan, owned both route66d.com and theamericandesigns.com.  In response to a cease and desist letter sent by GoDaddy relating to route66d.com, Mr. Ali apologized for the "inappropriate use of data and trademark" on the website and advised that he had "purchased this domain on behalf of [a] client and let him use my hosting services."  Exhibit S.  Upon information and belief, and based upon the similarities between the Route 66 and American Designs websites and Defendants' other websites, as discussed below, Defendants were responsible, in whole or in part, for the Route 66 and American Designs spam campaigns, and the use of the GoDaddy Marks on the websites resolving from route66d.com and theamericandesigns.com.

**E.    Common Features Demonstrate a Common Enterprise**

37.    Websites resolving from the majority of the Infringing Domains are similar in design, layout, and in the products and services offered to those used in the Route 66 and American Designs spam campaigns.    A number of the websites resolving from the Infringing Domains are also identical to each other.  By way of example, the respective landing pages for www.godaddydesigns.com and www.godaddywebsitecoupon.com appears as follows:

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23





24  A selection of screenshots of the websites resolving from the Infringing Domains is

25  attached hereto as Exhibit T.

26      38.     The websites resolving from the Infringing Domains share a number of

27  common features that demonstrate that Defendants own, operate, and/or control them.

28  These features include, but are not limited to, the following:

a.     Design, layout, and products: many of the websites resolving from the Infringing Domains are nearly identical copies of one another.  *See id.*

b.     Address: as noted above, the registered WHOIS contact address for many of the Infringing Domains is the Fremont Address.

c.     Telephone Number: many of the Infringing Domains identify the 800 Number as their telephone number—the number that SVG, Blitz, and Logo Jeeves all advertise as their number.

d.     Business Description: the source code for the websites resolving from the Infringing Domains contain nearly identical business descriptions, and often identifies Defendants' company, Branded Logo, instead of the entity related to the Infringing Domain at issue.  For example, the source code for the website resolving from godaddybrandagency.com states that "Branded Logo Designs is a leading logo and website design agency based in USA.  Our logo designers and web designers build brands and websites for established and new start up [sic] businesses worldwide."  *See* Exhibit U.  Other of the websites resolving from infringing domains identify entities such as "Godaddy Design Coupons," or "Verizon Designs," or "godaddydesignservice," followed by the same description.  A sample of the source codes for certain websites resolving from the Infringing Domains is attached hereto as Exhibit V.

e.     Similarities to Defendants' other websites: the basic format for websites resolving from the Infringing Domains matches those websites associated with Defendants' other businesses.  A sample of landing page images for certain of Defendants' businesses is attached hereto as Exhibit W.

**F.     Defendants' Ongoing Conduct and Spam Advertisements to Consumers**

39.     Defendants have shown no willingness to cease their conduct. Defendants have continued to register new domains that infringe on the GoDaddy Marks, and have continued to send spam communications to individuals, including GoDaddy customers and individuals who are not presently GoDaddy customers.

40.     On or about August 24, 2017, GoDaddy received an email from Logo Jeeves that contained a transcript of a chat between a consumer and a customer service representative at godaddydesignservice.com.  *See* Exhibit X.  In response to the consumer's question of whether godaddydesignservice.com was GoDaddy, the representative said that "we assist godaddy client [sic] where the design work is concerned."  *Id.*  The consumer then asked whether godaddydesignservice.com was a subsidiary of GoDaddy.com, and the service representative replied, "yes."  *Id.*

41.     On or about September 12, 2017, an individual (who reported that he did not have an account with GoDaddy) posted on his twitter account an image of an SMS advertisement he had received, purportedly from GoDaddy.  *See* Exhibit Y.  This message provided, "Godaddy Reminder, Last Call to Activate Your 90% Off Animated Video Deal.  Click Here 88monsters.us to Active Now & grow your Sales by 1000%.  STOPRM to Stop."  *Id.*  However, the website indicated in the message, http://88monsters.us ("88monsters") is nearly identical in form to the websites that resolve from the Infringing Domains:



Upon information and belief, and based upon the similarities between 88monsters and Defendants' other websites, Defendants own, operate, and/or control 88monsters.

42.   88monsters explicitly utilizes the GoDaddy Marks in its advertisements and on its websites.   GoDaddy never consented to 88monster's use of the GoDaddy Marks, and has no relationship with 88monsters.

43.   On or about September 19, 2017, GoDaddy received another customer complaint after receiving an unsolicited advertisement from "GoDaddy" at "sales@godaddywebdesigns.com," another of Defendants' Infringing Domains.   *See* Exhibit Z.   This email purported to come from a "Senior Officer" at "GoDaddy Design," and included Defendants' telephone number, the 800 Number.   *Id.*

44.   GoDaddy's pre-filing investigation also uncovered the sheer volume of Defendants' spam advertising.   For example, on information and belief, Defendants send each individual consumer multiple spam advertising emails from many of Defendants' businesses.   The following images represent just a small sample of the spam emails sent to each individual consumer as part of Defendants' spam campaigns:

///
///
///
///
///
///
///
///
///
///
///
///
///

To: hentai@xxlocanto.us
From: sales@godaddydesigns.com (sender info)
Subject: rainpedia.com needs an identity to standout
Received: 2017-06-22 19:04:20 (3 sec.)

Delete Message

view online

# GODADDY

## Save time and grab the perfect Logo for rainpedia.com

Hey there customer,

Now that your domain is registered, we have some ideas for your **Logo and Website** that can help you attract users and get Live in no time.

Grab your Logo for USD($) 29 only - Limited Time Offer
*Unlimited Revisions, 24 Hour Delivery, Guarantee Money back if not 100% satisfied with the designs*

We are proud to be the world's leading design agency having catered online brand design services for 15,000 satisfied clients globally including Uber, Snap, and Flipkart.

*Why choose Godaddy?*
Get Premium Logo design service for USD($) 19 only.
Get your domain Live within 24hours.
Unique brand identity for your business that represents the true essence of your brand.
Multiple unique design options to choose from on any package.

Check out these amazing logo designs our team of professional In-house Designers have worked on recently.

Visit complete Logo Portfolio.

**Sophia Burgundy, Co-Founder**
GoDaddy Designs
www.godaddydesigns.com

Mark Spam / Unsubscribe

GoDaddy Designs, 140 West St, New York, NY 10013, New York New 10013, United States

To: hentai@xxlocanto.us
From: steve.hobbs@godaddygraphicdesigns.com (sender info)
Subject: your company needs an identity to standout
Received: 2017-06-22 19:25:18 (3633 sec.)

**Delete Message**

view online

### Save time and grab the perfect Logo for your company

Hey customer,

Now that your domain is registered, we have some ideas for your **Logo and Website** that can help you attract users and get Live in no time.

Grab your Logo for USD($) 19 only - Limited Time Offer
*Unlimited Revisions, 24 Hour Delivery, Guarantee Money back if not 100% satisfied with the designs*

We are proud to be the world's leading design agency having catered online brand design services for 15,000 satisfied clients globally including Uber, Snap, and Flipkart.

*Why choose Godaddy?*
Get Premium Logo design service for USD($) 19 only:
Get your domain Live within 24hours.
Unique brand identity for your business that represents the true essence of your brand.
Multiple unique design options to choose from on any package.

Check out these amazing logo designs our team of professional In-house Designers have worked on recently.

Visit complete **Logo Portfolio**.

**Sophia Burgundy, Co-Founder**
GoDaddy Designs
www.godaddygraphicdesigns.com

Mark Spam / Unsubscribe

GoDaddy Designs, 45333 Fremont Blvd # 5 Fremont CA 94538, Fremont California 94538, United States

COMPLAINT





To: hentai@xxlocanto.us
From: esabella@theanimationworld.com (sender info)
Subject: Try animation for your website
Received: 2017-08-23 15:39:56 (993 sec.)

Hey There,

Do not overlook the value of SEO on video of your website. Highlight your products, showcase your services, explain your company and introduce new customers through our high impact 60-90 second animated EXPLAINER VIDEOS for your website, social media and video sites.

The Animation World offers you 77% EARLY BIRD DISCOUNT if you take step towards improving your brand today.

CLICK HERE to avail this exciting opportunity and lift your brand identity.

We develop Video Animations which can show the mechanics and functionality of a product, describe any process or engage your audience with a visual spectacle.

Video Animations are also great way to boost your web traffic. Google loves quality content, and puts a lot of focus on video. Streamed via your website, a video can become an important part of your SEO strategy and social media campaigns.

WANT TO SEE SOME EXAMPLES?

Have a look through some of our Recent Work & also check out our Pricing Plans.


Esabella Elly
Customer Relations Manager
www.theanimationworld.com
Toll free no: 877-326-0221

This email was sent to you by THE ANIMATIONS WORLD located at 45333 Fremont Blvd # 5  Fremont CA 94538 because you are a registered user of our hosting services or partner hosting services. Click here to avoid receiving future emails from us.

---

To: hentai@xxlocanto.us
From: stuart@ExplainerVideoJunkies.com (sender info)
Subject: Hey! get custom video for your domain
Received: 2017-08-18 15:41:10 (483 sec.)

Hey there,

Today, most companies are using video animations to introduce their services, market their products & grab customer attention. With our help you can also get a custom animation video and make a lasting impression on your potential customers.

Explainer Video Junkies gives you engaging, unique, creative, exciting, interactive and inspiring videos along with lots of discounts.

JOIN US NOW & ENJOY 70% OFF ON VIDEO ANIMATIONS (Valid for 24 hours only)

Your Story + Explainer Video Junkies = Something Amazing.

An effective animation video will benefit you in:

- Improved conversion
- Improved Search Engine Marketing
- Simplified Communication of Products & services
- Reinforced Brand Awareness and Trust
- Share your video on Social Media and increase your reach

If you'd like to check out our Portfolio and Customer reviews, please swing by our Website.

Warmest Regards,

Natasha Stuart
Explainer Video Junkies
Website: www.explainervideojunkies.com
Toll free: 800 589 2951

45.    The emails utilized by Defendants to further their spam campaigns share many features that demonstrate a common scheme and design.  In addition to the emails' similar design and content, the first two emails originate from two Infringing Domains, godaddydesigns.com and godaddygraphicdesigns.com.  Three of the emails identify the Fremont Address as the contact address for their respective companies. Two of the emails identify the 877 Number as their contact telephone number, while another utilizes the 800 Number.  These emails represent a small fraction of the spam emails sent by Defendants to just one consumer in a three month period, demonstrating the volume of Defendants' unlawful marketing efforts, and the negative impact on GoDaddy's protected trademarks and goodwill.

46.    In the last week alone, GoDaddy received a number of new customer complaints regarding Defendants' conduct, including a threat of litigation against GoDaddy for Defendants' spam advertisements.

47.    On or about October 6, 2017, GoDaddy received a letter from an attorney representing a consumer who had received at least two facsimile advertisements from Animation Fish, located at http://animationfish.com, that stated:

1   This attorney threatened to bring a consumer class action against GoDaddy for an

2   alleged violation of the Telephone Consumer Protection Act, believing that GoDaddy

3   was affiliated with Animation Fish.

4       48.    Animation Fish explicitly utilizes the GoDaddy Marks in its

5   advertisements and on its websites:



17   GoDaddy never consented to Animation Fish's use of the GoDaddy Marks, and has

18   no relationship with Animation Fish.

19       49.    GoDaddy's investigation of Animation Fish led to a related entity,

20   Animation Monster, located at https://animationmonster.us, which uses a similar

21   design to 88monster's website, as well as the same telephone number ((214) 272-

22   2194). Upon information and belief, and based on these connections, Animation Fish

23   is also a part of Defendants' common plan or scheme.

24       50.    On or about October 12, 2017, GoDaddy received another customer

25   complaint regarding the Infringing Domains, this time involving

26   godaddydomaindesigns.com. The customer informed GoDaddy that, approximately

27   twelve hours after purchasing a domain name with GoDaddy, the customer received

28   the following spam advertisement from Defendants:

> Your domain name bestautopieces.com has been registered and now you need to set up your Business Logo and Website in order to get your domain online.
> At GoDaddy we provide a cost effective way to enhance your brand presence online. Simply Sign-Up with your details and avail up-to 70% OFF on your Logo and Website Design.
>
> ACTIVATE YOUR LOGO COUPON - (Expires in 24Hrs)
> And grab the most dynamic Logo for your brand tailored to your business requirements.
> GoDaddy: Cost Effective & Conversion Optimized
>
> Pueden ver el sitio web acá: http://godaddydomaindesigns.com/

51.     GoDaddy has expended significant time and expense, including in connection with the retention of counsel, in (a) identifying the Infringing Domains and associated websites, (b) sending numerous cease-and-desist letters, and (c) addressing the consumer fallout of Defendants' spam advertisements, including multiple litigation threats.   In addition, Defendants' unlawful use of the GoDaddy Marks caused dilution of GoDaddy's interest in legally protected trademarks.   Defendants' unlawful conduct has caused GoDaddy significant monetary harm, including, but not limited to, the costs associated with countless hours of its employees' time, thousands of dollars in legal fees, and damage to GoDaddy's trademarks, brand, and good will.

## FIRST CLAIM FOR RELIEF

### Trademark Infringement (Lanham Act, 15 U.S.C. § 1114)

(By GoDaddy Against All Defendants)

52.     GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

53.     GoDaddy is the owner and registrant of the GoDaddy Marks.

54.     The GoDaddy Marks are valid, protectable service marks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

55.     Defendants have used the GoDaddy Marks in connection with the sale of their logo and website design business without GoDaddy's consent, in a manner that is likely to cause confusion, or to cause mistake, or to deceive.

56.    Defendants' infringement of the GoDaddy Marks is willful.

57.    GoDaddy has been and continues to be damaged by Defendants' infringement.

58.    Defendants' acts have caused irreparable injury to GoDaddy's good will and reputation.    The injury to GoDaddy is and continues to be ongoing and irreparable.  An award of monetary damages alone cannot fully compensate GoDaddy for its injuries and GoDaddy lacks an adequate remedy at law.

59.    GoDaddy is entitled to an injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages pursuant to 15 U.S.C. § 1117(b), and disgorgement of profits.

60.    As this case is an exceptional case, GoDaddy is entitled to recover its attorneys' fees incurred in connection with this Action under 15 U.S.C. § 1117(a).

**SECOND CLAIM FOR RELIEF**

**False Designation of Origin (Lanham Act, 15 U.S.C. § 1125(a))**

(By GoDaddy Against All Defendants)

61.    GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

62.    The GoDaddy Marks are valid, protectable service marks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

63.    GoDaddy is the owner and registrant of the GoDaddy Marks.

64.    GoDaddy operates under and uses the trade name, "GoDaddy," in connection with its services.

65.    Defendants have made commercial use of the GoDaddy Marks and GoDaddy's trade name.

66.    Defendants' use has been done in a manner that is likely to cause confusion to or to cause mistake, or to deceive as to the affiliation, connection, or

association of GoDaddy with Defendants, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

67.    GoDaddy has not consented to Defendants' use of the GoDaddy Marks or trade name.

68.    Defendants' use of the GoDaddy Marks and trade name was willful.

69.    Defendants' acts constitute false statements in connection with products and/or services distributed in interstate commerce, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70.    Defendants' acts have caused irreparable injury to GoDaddy's good will and reputation.   The injury to GoDaddy is and continues to be ongoing and irreparable.  An award of monetary damages alone cannot fully compensate GoDaddy for its injuries and GoDaddy lacks an adequate remedy at law.

71.    GoDaddy is entitled to an injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages pursuant to 15 U.S.C. § 1117(b), and disgorgement of profits.

72.    As this case is an exceptional case, GoDaddy is entitled to recover its attorneys' fees incurred in connection with this Action under 15 U.S.C. § 1117(a).

### THIRD CLAIM FOR RELIEF

**Trademark Dilution (Anti-Dilution Act, 15 U.S.C. § 1125(c))**

(By GoDaddy Against All Defendants)

73.    GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

74.    The GoDaddy Marks are famous trademarks within the meaning of the Anti-Dilution Act, 15 U.S.C. § 1125(c).

75.    As a result of Defendants' use of the GoDaddy Marks to sell their logo and website design services, the distinctive qualities of the GoDaddy marks are being and will continue to be diluted.

76.     Defendants' acts have diluted and will continue to result in the dilution of the distinctive nature of the GoDaddy Marks through blurring, in violation of 15 U.S.C. § 1125(c).

77.     Defendants' acts, which unlawfully and without GoDaddy's consent, associate their dubious or outright fraudulent services with GoDaddy have diluted and will continue to result in the dilution of the distinctive nature of the GoDaddy Marks through tarnishment, in violation of 15 U.S.C. § 1125(c).

78.     Defendants' wrongful conduct constitutes an extreme threat to the distinctiveness of the GoDaddy Marks that GoDaddy has expended great effort to develop and maintain.

79.     The distinctive nature of the GoDaddy Marks is of enormous value, and GoDaddy is suffering and will continue to suffer irreparable harm and blurring of the GoDaddy Marks if Defendants' wrongful conduct is allowed to continue.

80.     The dilution of the GoDaddy Marks will continue unless the Court orders injunctive relief against Defendants.

81.     Defendants' acts have caused irreparable injury to GoDaddy's good will and reputation.   The injury to GoDaddy is and continues to be ongoing and irreparable.  An award of monetary damages alone cannot fully compensate GoDaddy for its injuries and GoDaddy lacks an adequate remedy at law.

82.     GoDaddy is entitled to an injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages pursuant to 15 U.S.C. § 1117(b), and disgorgement of profits.

83.     As this case is an exceptional case, GoDaddy is entitled to recover its attorneys' fees incurred in connection with this Action under 15 U.S.C. § 1117(a).

///

///

///

# FOURTH CLAIM FOR RELIF

## Cybersquatting (15 U.S.C. § 1125(d))

(By GoDaddy Against All Defendants)

84.   GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

85.   Defendants' registration and operation of the Infringing Domains is identical to, or confusingly similar to and dilutive of, the GoDaddy marks and the GoDaddy Site.

86.   The GoDaddy Marks are famous, and were famous before Defendants began the offending commercial activities that precipitated this Action.

87.   Defendants have registered the Infringing Domains with a bad faith intent to profit from the GoDaddy Marks.

88.   Defendants' conduct described herein, including, but not limited to, its use in commerce of the Infringing Domains, is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation or approval of Defendants' services.  Further, Defendants' acts described herein constitute false representations of fact that are likely to cause—and have already caused, as alleged herein—confusion, mistake, or deception as to the source, sponsorship affiliation, or approval of Defendants' services.

89.   As a consequence of Defendants' willful infringement, GoDaddy is entitled to recover from Defendants three times the amount of actual profits or damages, whichever is greater, as well as GoDaddy's attorneys' fees in connection with this action.

90.   As this cases is an exceptional case, GoDaddy is entitled to recover its attorneys' fees incurred in connection with this Action under 15 U.S.C. § 1117(a).

91.   In addition to any other remedies requested herein or permitted by law, Defendants' conduct warrants that the Court order the forfeiture or cancellation of the

Infringing Domains or the transfer of the Infringing Domains to GoDaddy pursuant to 15 U.S.C. § 1125(d)(1)(C).

## FIFTH CLAIM FOR RELIEF

### Unfair Competition (Cal. Bus. & Prof. Code § 17200, *et seq.*)

(By GoDaddy Against All Defendants)

92.    GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

93.    Defendants have engaged in, and continue to engage, in unlawful, unfair, and/or fraudulent business acts or practices by committing illegal acts and practices as alleged herein in an effort to, among other things, (a) sell their services, (b) to trade off the goodwill of the GoDaddy Marks, (c) deceive consumers as to the origin and affiliation of their services, and (d) gain an unfair competitive advantage over GoDaddy.

94.    These unlawful, unfair, and/or fraudulent business acts or practices were committed pursuant to business activity related to the advertising and sale of Defendants logo design and website design services.

95.    GoDaddy has standing to pursue this claim because it has suffered injury in fact and has lost money or property as a result of Defendants' actions, as set forth herein.  GoDaddy's losses include money expended in locating infringing domains and websites, as well as legal fees for issuing cease-and-desist letters related to such domains and websites.

96.    Defendants' actions and conduct constitute fraudulent, unlawful, and unfair competition as defined by Cal. Bus. & Prof. Code § 17200, *et seq.*

97.    Defendants' conduct constitutes violations of numerous state and federal statutes and codes, including, but not limited to, state false advertising laws, including Cal. Bus. & Prof. Code § 17500; trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1114; false designation of origin pursuant to the Lanham Act, 15 U.S.C. §

1125(a); trademark dilution, 15 U.S.C. § 1125(c); and cybersquatting, 15 U.S.C. § 1125(d).

98.     GoDaddy seeks temporary, preliminary, and permanent injunctive relief in order to enjoin Defendants from further unlawful, unfair and deceptive business practices.

## SIXTH CLAIM FOR RELIEF

### False Advertising (Cal. Bus. & Prof. Code § 17500)

(By GoDaddy Against All Defendants)

99.     GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

100.    Defendants, through the conduct described above, have made and continue to make false and misleading representations of fact in advertisements and promotions, which in fact are untrue or misleading in violation of Cal. Bus. & Prof. Code § 17500.

101.    Defendants' conduct, as described above, includes the misappropriation and misuse of the GoDaddy Marks in order to sell their logo design and website design services.

102.    Defendants intentionally and willfully used and continue to use the GoDaddy marks in a manner that is likely to cause confusion to or to cause mistake, or to deceive as to the affiliation, connection, or association of GoDaddy with Defendants, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

103.    Defendants have falsely advertised an association with GoDaddy and/or that their products and services actually come from, or are approved by, GoDaddy.

104.    GoDaddy has suffered injury-in-fact as a result of Defendants' false advertising in the form of lost sales, lost profits, actual damages, and confusion in the marketplace regarding the nature of the services that GoDaddy offers.

105.   Defendants' actions, as described herein have greatly and irreparably damaged GoDaddy and will continue to damage GoDaddy unless enjoined by this Court.   Accordingly, GoDaddy is entitled to an injunction under Cal. Bus. & Prof. Code § 17535.

## SEVENTH CLAIM FOR RELIEF

### California Common Law Trademark Infringement

(By GoDaddy Against All Defendants)

106.   GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

107.   The GoDaddy Marks are valid, protectable service marks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

108.   GoDaddy is the owner and registrant of the GoDaddy Marks.

109.   GoDaddy operates under and uses the trade name, "GoDaddy," in connection with its services.

110.   Defendants have made commercial use of the GoDaddy Marks and GoDaddy's trade name.

111.   Defendants' use has been done in a manner that is likely to cause confusion to or to cause mistake, or to deceive as to the affiliation, connection, or association of GoDaddy with Defendants, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

112.   GoDaddy has not consented to Defendants' use of the GoDaddy Marks or trade name.

113.   Defendants' use of the GoDaddy Marks and trade name was willful.

114.   Based on the facts alleged herein, GoDaddy has established prior use of the GoDaddy Marks and the GoDaddy trade name.

115.   Defendants' acts have caused irreparable injury to GoDaddy's good will and reputation.   The injury to GoDaddy is and continues to be ongoing and

irreparable.  An award of monetary damages alone cannot fully compensate GoDaddy for its injuries and GoDaddy lacks an adequate remedy at law.

116.  GoDaddy is entitled to an injunction against Defendants, as well as all other remedies available under California common law.

## EIGHTH CLAIM FOR RELIEF

### Intentional Interference With Prospective Economic Advantage

(By GoDaddy Against All Defendants)

117.  GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

118.  GoDaddy has economic relationships with each of its customers, as GoDaddy provides many of its services on a subscription basis, such that customers pay for services in an ongoing and periodic manner.  These relationships contain the probability of a future economic benefit, in the form of renewal payments for additional periods of a given service, and/or for additional purchases that customers make on their GoDaddy accounts.

119.  Defendants have knowledge of GoDaddy's economic relationships with its customers due to, in part, their creation and use of GoDaddy accounts to purchase GoDaddy's products and services.

120.  Defendants intended to interfere with the economic relationships between GoDaddy and its customers, by, among other things, actively targeting, advertising to, and soliciting purchases from, consumers with GoDaddy accounts and contractual agreements with GoDaddy.

121.  Defendants' conduct caused an actual disruption of the economic relationships between GoDaddy and its customers in the following ways:

a.      Defendants' services (including, but not limited to, logo design, business design, and website design services), all overlap with services that GoDaddy offers.  Defendants' misrepresentations to GoDaddy's customers that Defendants' products and services come from and/or are recommended by

GoDaddy caused customers to purchase products and services from Defendants that they otherwise would have purchased from GoDaddy, on the misimpression that customers were in fact purchasing products and services from GoDaddy.

b. Defendants' unsolicited communications to GoDaddy's customers upset customers, who did not want to receive Defendants' advertisements and communications. Such customers complained to GoDaddy on the belief that GoDaddy was responsible for these communications, or otherwise terminated their accounts and contracts with GoDaddy as a result of Defendants' conduct.

c. GoDaddy customers who purchased Defendants' products and services received low-quality products and services, harming customers' perception of GoDaddy's products and services, and causing customers to forego additional purchases from GoDaddy and/or terminate their accounts and contracts with GoDaddy.

122. As set forth above, Defendants' conduct, including but not limited to their unlawful use of GoDaddy's Marks, and their false representations to consumers, is independently wrongful.

123. GoDaddy has been harmed as a result of Defendants' actions, including but not limited to: lost purchases, lost profits, lost customers, reputational harm, and time spent mollifying understandably frustrated consumers.

124. Defendants' conduct was a substantial factor in causing GoDaddy harm.

125. In engaging in the acts described above, the actions of Defendants were willful, oppressive, fraudulent and/or malicious and were engaged in with the intent to interfere with the economic relationships between GoDaddy and its customers. Accordingly, GoDaddy is entitled to an award of punitive damages in a sum according to proof at trial, in accordance with California Civil Code section 3294.

**NINTH CLAIM FOR RELIEF**

**Accounting**

(By GoDaddy Against All Defendants)

126. GoDaddy incorporates by reference the allegations of each of the preceding paragraphs as though fully set forth herein.

127. On information and belief, Defendants obtained business through the unlawful conduct alleged in this Complaint.  To the extent Defendants received money as a result of their misconduct, at GoDaddy's expense, some or all such money is rightfully due to GoDaddy.

128. The identities of the users of Defendants' services, and amount of money due from Defendants to GoDaddy, cannot be ascertained without a full accounting of the Defendants' wrongful and unlawful conduct.  GoDaddy is therefore entitled to a full accounting and records of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

Wherefore, GoDaddy prays that the Court enter judgment in favor of GoDaddy and against Defendants on all causes of action, and grant GoDaddy the following relief:

1. A preliminary and permanent injunction enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, and those acting in concert with or on behalf of any of them, from:

    a. Using the GoDaddy Marks or any confusingly similar name or mark as part of the corporate or fictitious name of any of Defendants' businesses;

    b. Using the GoDaddy Marks or any confusingly similar name or mark in connection with any services, advertising, sales, or for any other reason;

    c. Using the GoDaddy Marks or any confusingly similar name or mark in any domain name or on any website, or operating any

website that contains the GoDaddy Marks or any confusingly similar name or mark;

d.     Using the GoDaddy Marks or any confusingly similar name or mark in any manner likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with GoDaddy; in any manner likely to dilute the distinctive quality of the GoDaddy Marks; or in any manner likely to injure GoDaddy's good will and/or reputation;

e.     Using the GoDaddy Marks or any confusingly similar name or mark in any way that implies that GoDaddy owns, sponsors, approves, or is otherwise affiliated with Defendants' services;

f.     Targeting, sending unsolicited communications to, and/or directly advertising to GoDaddy's customers by email, SMS text messaging, or any other form of direct communication;

g.     Unfairly competing with GoDaddy in any manner whatsoever;

2.     An accounting;

3.     Damages in an amount to be proven at trial;

4.     Prejudgment interest;

5.     An order awarding GoDaddy its attorneys' fees and costs;

6.     An order awarding GoDaddy punitive damages in a sum to be determined at trial;

7.     An order awarding GoDaddy treble damages on the basis of Defendants' violations of the Lanham Act;

8.     An order cancelling or causing Defendants to forfeit the Infringing Domains, or transferring ownership of the Infringing Domains to GoDaddy as owner of the GoDaddy Marks; and

9.     An order awarding GoDaddy such other and further relief as the Court deems just and proper.

Dated:  November 10, 2017          By:  *s/ Paula L. Zecchini*

                                   Paula L. Zecchini (SBN 238731)
                                   Nathan Dooley (SBN 224331)
                                   Jeffrey M. Monhait (*pro hac vice* to be submitted)

                                   *Attorneys for Defendant*
                                   GO DADDY OPERATING COMPANY, LLC

1

## JURY DEMAND

2

GoDaddy respectfully requests a jury trial on all issues triable thereby.

3

Dated:  November 10, 2017            By:   *s/ Paula L. Zecchini*
4

5          Paula L. Zecchini (SBN 238731)
           Nathan Dooley (SBN 224331)
6          Jeffrey M. Monhait (*pro hac vice* to be
           submitted)
7
           *Attorneys for Defendant*
8          GO DADDY OPERATING COMPANY, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28