UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GO DADDY OPERATING COMPANY, LLC,

           Plaintiff,

    v.

USMAN GHAZNAVI, et al.,

           Defendants.

Case No.  17-cv-06545-PJH

**ORDER**

Re: Dkt. Nos. 30, 31, 32, 33, 37, 41, 42, 46, 47, 48, 51

Defendants Usman Anis's and Silicon Valley Graphic, LLC's motion to dismiss plaintiff's complaint in its entirety and strike portions of the complaint; defendant Salman Ghaznavi's motion to quash service and dismiss the complaint; plaintiff GoDaddy's motion for a preliminary injunction; and the parties' numerous requests for judicial notice and evidentiary objections came on for hearing before this court on February 14, 2018. Plaintiff appeared through its counsel, Nathan Dooley.  Defendants appeared through their counsel, Brenda Prackup.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows, for the reasons stated at the hearing and for the following reasons.

**BACKGROUND**

Plaintiff Go Daddy Operating Company, LLC ("GoDaddy") brought this action against defendants Usman Ghaznavi a/k/a Usman Anis ("Usman Anis"), Salman Ghaznavi a/k/a Salman Anis ("Salman Ghaznavi"), Silicon Valley Graphics ("SVG"), and a number of unidentified "Doe" defendants for injunctive relief and damages arising from

United States District Court
Northern District of California

alleged unauthorized use of GoDaddy's trademarks.

GoDaddy asserts violations of 15 U.S.C. § 1114 (trademark infringement), § 1125(a) (false designation of origin, unfair competition, false advertising), § 1125(c) (trademark dilution), § 1125(d) (cybersquatting), as well as state-law and common-law claims of unfair competition, false advertising, trademark infringement, and intentional interference with prospective economic advantage.  Plaintiff also seeks an accounting.

In addition to acting as a domain name registrar, GoDaddy offers more than 50 online products and services to the public, including website design, logo design, and business design.  Compl. ¶¶ 2, 18–20.  As set forth in the complaint, GoDaddy owns certain trademarks and has developed significant common law rights in the GoDaddy trade name.  See id. ¶¶ 21–22.

On November 29, 2017, GoDaddy filed certificates of service showing service of the summons and complaint on each of the defendants at 45333 Fremont Blvd., Suite 5, in Fremont, California (the "Fremont Address").  The proofs of service show (1) personal service on Usman Anis on November 14, 2017; (2) substituted service on SVG on November 14, 2017, at the address of its registered agent, by leaving papers with Usman Anis, described as "Employee/Owner," followed by service by mail; and (3) substituted service on Salman Ghaznavi, by leaving papers with Lo Ann Do, graphic designer, on November 17, 2017, following attempts on three successive days to personally serve Salman Ghaznavi.  Dkts. 16–18.

The complaint arises primarily from defendants' alleged use of GoDaddy's trademarks on a number of websites they operate (the websites at issue are the "Infringing Domains").  Defendants allegedly use the marks to advertise logo design, business design, and website design services.  Compl. ¶ 3.  Plaintiff further alleges that the defendants contacted GoDaddy customers and non-customers, falsely identified themselves as working with GoDaddy, and solicited business based on those false representations.  Id. ¶¶ 4, 39–50.  GoDaddy alleges a spam campaign and telephonic conversations between defendants' employees and potential customers.  Id. ¶¶ 40–47.

1    Plaintiff alleges that defendants have orchestrated a similar pattern and practice of

2    offenses against others' intellectual property, through a network of related corporate

3    entities, which are ultimately controlled by the named defendants in this action.  Id. ¶¶ 6–

4    7, 28–29, 37–38.  GoDaddy alleges that defendants conduct their network of operations

5    from two addresses, called the "Fremont Address" and the "Sunnyvale Address" (440

6    North Wolfe Road, MS# 142, Sunnyvale, California 94085).

7        GoDaddy alleges that the Infringing Domains utilize a "domain name privacy

8    service," and that prior to utilizing the domain name privacy service, defendants

9    registered domains using alias names, including "Fedrick King."  Id. ¶¶ 24–25.  GoDaddy

10   claims that such alleged acts make identifying the true owner of these domains difficult

11   when relying on public information, although GoDaddy claims to have learned that some

12   were registered by defendants.  Id. ¶¶ 24–27.  For example, GoDaddy claims to have

13   learned through WhoIsGuard that Salman Ghaznavi is the registered owner of at least

14   one of the Infringing Domains.  Id. ¶ 26.

15       GoDaddy asserts that it discovered defendants' use of the Infringing Domains in

16   July 2017, when a customer brought it to GoDaddy's attention.  Id. ¶¶ 30–31.  When

17   GoDaddy investigated, it learned that the infringing domain was registered using

18   GoDaddy, on an account paid for by Usman Anis using the Fremont Address.  Id. ¶ 32.

19   GoDaddy terminated that account based on violations of GoDaddy's terms of service and

20   discovered that the same account had registered four additional Infringing Domains.  Id.

21   GoDaddy then learned that defendants had a second GoDaddy account, paid for by the

22   same credit card linked to Usman Anis, which listed the Sunnyvale Address as the

23   contact and billing address.  Id. ¶ 33.

24       GoDaddy asserts that its discovery of the Infringing Domains also shed light on

25   their relation to a spam campaign involving the domain name route66d.com, which in the

26   summer of 2016 was used to send spam text messages that appeared to be from

27   GoDaddy.  Id. ¶ 34.  GoDaddy contends that this spam campaign gave rise to a large

28   number of customer complaints and threats of litigation from customers who believed

United States District Court
Northern District of California

1  they had received the messages from GoDaddy.  Id. ¶ 35.  This spam campaign was

2  nearly identical to another spam campaign during the same time period that also used

3  GoDaddy marks and directed GoDaddy customers to a website at

4  theamericandesigns.com.  Id.

5      The complaint goes on to explain how GoDaddy learned of other domains or

6  products that improperly used GoDaddy trademarks, and/or which engaged in spam

7  advertising that appeared to come from GoDaddy, and which it alleges originated with

8  defendants.  See id. ¶¶ 37–51.

9      GoDaddy filed its complaint on November 10, 2017.  Dkt. 1.  On December 14,

10  2017, GoDaddy moved the court for a temporary restraining order (Dkt. 24), which was

11  argued and denied on December 20, 2017 (Dkt. 27).  In that order declining to issue a

12  TRO, the court reasoned:

13          It is undisputed that GoDaddy has a protectable interest in the
           GoDaddy Marks, and that unauthorized use of the Marks by
14          persons or entities other than GoDaddy would be likely to
           cause consumer confusion.  However, the court finds that
15          GoDaddy has failed to make a clear showing that it is entitled
           to the extraordinary remedy of temporary injunctive relief.
16          Primarily, GoDaddy has not made a sufficient showing that
           any particular defendant is responsible for the alleged
17          infringement in this case. . . .  [T]he interests of justice would
           be better served by a fully-briefed motion for injunctive relief,
18          rather than the present hastily-assembled motion for a
           temporary restraining order, heard on shortened time.

19

20  Dkt. 27 at 3–4.

21      On December 26, 2017, defendants Usman Anis and SVG filed a motion to

22  dismiss and strike portions of the complaint.  Dkt. 30.  On December 29, 2017, defendant

23  Salman Ghaznavi moved to quash service of the complaint and dismiss it for lack of

24  personal jurisdiction.  Dkt. 32.  On January 10, 2018, GoDaddy filed a motion for a

25  preliminary injunction against defendants Usman Anis, Salman Ghaznavi, and SVG.  Dkt.

26  37.

27                          **DISCUSSION**

28  **A.      Motion to Quash**

4

United States District Court
Northern District of California

1    To determine whether service of process is proper, courts look to the requirements

2    of Federal Rule of Civil Procedure 4, which provides that service is proper if it is done

3    "following state law for serving a summons in an action brought in courts of general

4    jurisdiction in the state where the district court is located or where service is made[.]"

5    Fed. R. Civ. P. 4(e)(1).  California allows substitute service at one's office, usual mailing

6    address, or usual place of business.  Cal. Civ. Proc. Code § 415.20(a)–(b).  Plaintiff

7    successfully effected substitute service on Salman Ghaznavi under California law by

8    leaving a copy of the summons and complaint at 45333 Fremont Blvd., Suite 5, Fremont,

9    CA 94538 in the presence of a person apparently in charge and thereafter mailing a copy

10   of the summons and complaint by first-class mail.  See Dkt. 18.  Salman Ghaznavi

11   contends that service was ineffective because it did not comply with the additional

12   requirements of the Hague Convention.  Dkt. 32 at 13–14; Dkt. 40 at 9.  The Hague

13   Convention applies only when "a transmittal abroad . . . is required as a necessary part of

14   service."  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 707 (1988).

15   Furthermore, "the internal law of the forum is presumed to determine whether there is

16   occasion for service abroad."  Id. at 704.  Because California law does not require the

17   mailing of documents abroad in order to effect service of process in the technical sense,

18   the Hague Convention does not apply.  Id. at 707–08; Piatek v. Siudy, 351 F. App'x 232,

19   233 (9th Cir. 2009).

20   Defendant Salman Ghaznavi's motion to quash service is therefore DENIED.

21   Defendant's accompanying request for judicial notice (Dkt. 33) is DENIED as moot.

22   **B.    Motion to Dismiss for Lack of Personal Jurisdiction**

23   The party seeking to invoke the federal court's jurisdiction bears the burden of

24   demonstrating jurisdiction.  Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015).  When

25   resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts

26   uncontroverted facts in the complaint as true and resolves conflicts in affidavits in the

27   plaintiff's favor.  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir.

28   2011).

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014). Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction." Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)); see Int'l Shoe Co., 326 U.S. at 316–20.

Under general jurisdiction, a nonresident defendant may be subject to suit even on matters unrelated to his contacts with the forum. Daimler, 134 S. Ct. at 754–58. To establish general jurisdiction, the plaintiff must demonstrate that the defendant has continuous and systematic contacts sufficient to approximate physical presence in the state. In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Goodyear, 564 U.S. at 924; see generally Lockard v. Lockard, 15 F.3d 1086 (9th Cir. 1993). Being an officer or owner of a California corporation is not alone sufficient to establish general personal jurisdiction over an individual. Ishiyama v. Glines, No. 216CV00222APGPAL, 2016 WL 5661991, at *2 (D. Nev. Sept. 29, 2016); j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc., No. 08-cv-4254-PJH, 2009 WL 29905, at *7 (N.D. Cal. Jan. 5, 2009); Swensen v. Murchison, 507 F. Supp. 509, 512 n.3 (N.D. Cal. 1981); see also Johnston Farms v. Yusufov, No. 117CV00016LJOSKO, 2017 WL 6571527, at *5 n.3 (E.D. Cal. Dec. 26, 2017) (Oberto, Mag. J.); Logtale, Ltd. v. IKOR, Inc., No. 11-cv-05452-EDL, 2014 WL 1478901, at *5 (N.D. Cal. Apr. 14, 2014) (Laporte, Mag. J.).

In the absence of general jurisdiction, a court may exercise specific jurisdiction over a defendant if his less-substantial contacts with the forum gave rise to the claim or

6

1  claims pending before the court—that is, if the cause of action "arises out of" or has a

2  substantial connection with that activity.  Hanson v. Denckla, 357 U.S. 235, 250–53

3  (1958); see also Goodyear, 564 U.S. at 924–25.  The inquiry into whether a forum state

4  may assert specific jurisdiction over a nonresident defendant focuses on the relationship

5  among the defendant, the forum, and the litigation.  Walden v. Fiore, 134 S. Ct. 1115,

6  1121 (2014).

7       Specific jurisdiction is analyzed using a three-part test:  First, the nonresident

8  defendant must have purposefully directed his activities or consummated some

9  transaction with the forum or a forum resident, or performed some act by which he

10 purposefully availed himself of the privilege of conducting activities in the forum, thereby

11 invoking the benefits and protections of its laws; second, the claim must be one which

12 arises out of or relates to the nonresident defendant's forum-related activities; and third,

13 the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must

14 be reasonable.  See Picot, 780 F.3d at 1211.  If the plaintiff is successful at establishing

15 the first two prongs, the burden shifts to the defendant to set forth a compelling case that

16 the exercise of jurisdiction would not be reasonable.  Id. at 1211–12.

17      With regard to the first prong, the "purposeful availment" standard and the

18 "purposeful direction" standard are two distinct concepts.  Washington Shoe Co. v. A-Z

19 Sporting Goods Inc., 704 F.3d 668, 672 (9th Cir. 2012).  For claims sounding in tort,

20 courts apply the "purposeful direction" test.  Schwarzenegger v. Fred Martin Motor Co.,

21 374 F.3d 797, 802–03 (9th Cir. 2004).  Because GoDaddy's claims are based on

22 trademark infringement, generally characterized as a tort, personal jurisdiction may be

23 found if Salman Ghaznavi has purposefully directed his activities at the forum.[1]  See

24 Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998), modified on other

25 grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d

26

27 [1] For claims sounding in contract, courts apply the "purposeful availment" analysis, asking
   whether the defendant has "purposefully avail[ed]" itself of "the privilege of conducting
28 activities within the forum State, thus invoking the benefits and protections of its laws."
   Schwarzenegger, 374 F.3d at 802 (quoting Hanson, 357 U.S. at 253).

United States District Court
Northern District of California

1199 (9th Cir. 2006).  The plaintiff must allege that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Yahoo! Inc., 433 F.3d at 1206.

Acting as an employee or agent of a corporation does not shield one from individual personal jurisdiction when one's own actions within that corporation otherwise satisfy the personal jurisdiction test.  E.g., Davis v. Metro Productions, Inc., 885 F.2d 515, 522 (9th Cir. 1989); j2 Glob. Commc'ns, 2009 WL 29905, at *7 ("the fiduciary shield doctrine does not prevent this court from exercising jurisdiction over Luxenberg [corporate officer] merely because his acts in California were undertaken in an official, business capacity. . . .  The conduct that may be considered in determining whether the assertion of personal jurisdiction over Luxenberg is appropriate are those acts which Luxenberg would be personally liable for, i.e., tortious acts he authorized, directed, or meaningfully participated in."); Johnston Farms, 2017 WL 6571527, at *5 n.3.

Under Federal Rule of Civil Procedure 4(k)(2), "a court may exercise jurisdiction when three requirements are met.  First, the claim against the defendant must arise under federal law . . . .  Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction.  Third, the federal court's exercise of personal jurisdiction must comport with due process."  Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 461 (9th Cir. 2007) (citations omitted).  "The due process analysis is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States."  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1159 (9th Cir. 2006); Holland, 485 F.3d at 462 ("The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference:  rather than considering contacts between the [defendants] and the forum state, we consider contacts with the nation as a whole.").

Plaintiff fails to allege sufficient facts to support the exercise of general personal jurisdiction.  Plaintiff alleges in its complaint that Salman Ghaznavi is a California

United States District Court
Northern District of California

1   resident.  Compl. ¶ 11.  However, a declaration from Salman Ghaznavi states that he

2   resides full time and is employed in Pakistan.  Dkt. 32-1 ¶¶ 2–9.  Although the court must

3   accept uncontroverted allegations in plaintiff's favor, plaintiff has not submitted a

4   competing affidavit actually disputing that controverted point.  See Mavrix Photo, Inc.,

5   647 F.3d at 1223 ("We may not assume the truth of allegations in a pleading which are

6   contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor.") (citations

7   and internal quotation marks omitted).  Plaintiff argues that this court can exercise

8   general personal jurisdiction over Salman Ghaznavi due to his positions in and ownership

9   of various California corporations and similar entities.  That is not enough.  Plaintiff has

10  failed to allege that Salman Ghaznavi has sufficiently continuous and systematic contacts

11  with California or the United States for this court to exercise general personal jurisdiction

12  over him.

13      Plaintiff has similarly failed to allege sufficient facts to support the exercise of

14  specific personal jurisdiction.  For example, plaintiff may have alleged that companies

15  with which Salman Ghaznavi is associated have committed intentional acts aimed at

16  California, but plaintiff has not alleged that Salman Ghaznavi himself undertook such acts

17  or directed or meaningfully participated in such acts.

18      Because a more satisfactory showing of the facts is necessary to determine

19  whether the court has personal jurisdiction over Salman Ghaznavi—including Salman

20  Ghaznavi's place of residence, the extent of his ownership of and control over the various

21  entities in plaintiff's complaint, and whether he personally conducted or directed any of

22  the actions alleged in the complaint—jurisdictional discovery is appropriate.  Boschetto v.

23  Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008); America West Airlines, Inc. v. GPA Group,

24  Ltd., 877 F.2d 793, 801 (9th Cir. 1989) ("where pertinent facts bearing on the question of

25  jurisdiction are in dispute, discovery should be allowed"); Halo Elecs., Inc. v. Bel Fuse

26  Inc., No. CIV. C-07-06222 RMW, 2010 WL 2605195, at *7 (N.D. Cal. June 28, 2010).

27  Discovery will allow plaintiff to determine the level of control Salman Ghaznavi exercised

28  over the entities it alleges have violated its trademarks.  Second, the parties dispute

material facts on the issue.  For example, plaintiff alleges Salman Ghaznavi is a California resident (Compl. ¶ 11) and defendants disagree (Dkt. 32-1 ¶ 2); plaintiff claims Salman Ghaznavi sent or directed the sending of text messages, phone calls, and advertisements to California citizens (Dkt. 38 at 12–13), and defendants claim Salman Ghaznavi does not advertise in the U.S. at all (Dkt. 32-1 ¶ 8).

Therefore, the court DEFERS JUDGMENT on defendant Salman Ghaznavi's motion to dismiss for lack of personal jurisdiction.  The court GRANTS a 90-day period of jurisdictional discovery for plaintiff, ending on May 15, 2018.  Plaintiff may file a supplemental brief concerning this court's personal jurisdiction over Salman Ghaznavi on or before June 14, 2018; defendant may respond on or before June 28, 2018; and plaintiff may reply on or before July 5, 2018.  The briefing shall conform to Civil Local Rule 7, with respect to page limits and otherwise.  No hearing shall be held on the supplemental briefing.  As discussed below, the briefing may also address whether Salman Ghaznavi should be enjoined by the preliminary injunction issued herein.

## C.   Motion to Dismiss for Failure to State A Claim

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court must accept factual allegations in the complaint, legally conclusory statements not supported by actual factual allegations need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

United States District Court
Northern District of California

1    the court to draw the reasonable inference that the defendant is liable for the misconduct

2    alleged." Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

3    permit the court to infer more than the mere possibility of misconduct, the complaint has

4    alleged—but it has not 'show[n]'—'that the pleader is entitled to relief."  Id. at 679 (quoting

5    Fed. R. Civ. P. 8(a)(2)).  Where dismissal is warranted, it is generally without prejudice,

6    unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou,

7    411 F.3d 1006, 1013 (9th Cir. 2005).

8    **1.     Trademark Infringement, 15 U.S.C. § 1114**

9    "To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C.

10   § 1114, a party 'must prove:  (1) that it has a protectible ownership interest in the mark;

11   and (2) that the defendant's use of the mark is likely to cause consumer confusion.'"

12   Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir.

13   2011) (quoting Dep't of Parks & Recreation v. Bazaar Del Mundo Inc., 448 F.3d 1118,

14   1124 (9th Cir. 2006)).  The statute also requires plaintiff to show defendant's use of the

15   mark "in commerce."  15 U.S.C. § 1114(1).  The Lanham Act defines "use in commerce"

16   as "the bona fide use of a mark in the ordinary course of trade."  15 U.S.C. § 1127.  The

17   Ninth Circuit has held that, for example, "the use of a trademark as a search engine

18   keyword that triggers the display of a competitor's advertisement is a 'use in commerce'

19   under the Lanham Act."  Network Automation, 638 F.3d at 1144; see also Brookfield

20   Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1053 (9th Cir. 1999) (plaintiff

21   was entitled to a preliminary injunction with respect to infringing domain name registration

22   and purchasing search engine keywords because it had shown the marks were protected

23   and that there was a likelihood of confusion, although the court did not directly address

24   the "use in commerce" requirement).

25   Plaintiff's complaint contains deep factual detail, including specific allegations that

26   defendants have now and historically undertaken efforts to disguise their identities when

27   registering domains.  Compl. ¶¶ 6–7, 24–27, 36.  The complaint also details particular

28   mechanisms defendants allegedly employed to mask their identities, and plaintiff's

1   investigatory efforts to reveal the same.  Id. ¶¶ 24–27, 32–36.  Given plaintiff's well-pled,

2   factual allegations tying Usman Anis to the Fremont and Sunnyvale Addresses (id. ¶ 10),

3   tying SVG to the Fremont Address (id. ¶ 12), tying a number of domains at issue to

4   domain name privacy services (id. ¶ 24), and tying at least one domain using a privacy

5   service to the Fremont Address (id. ¶ 26), tying a domain registered to Fredrick King to a

6   GoDaddy account paid for by Usman Anis (id. ¶¶ 25, 32), plaintiff has proffered sufficient

7   facts to state a claim for relief that is plausible on its face by allowing the court to draw a

8   reasonable inference that the defendants are liable for the misconduct alleged.

9       Moreover, plaintiff specifically alleges that an email from "g0daddydesigns.com"

10  was sent "On Behalf of GoDaddy", that the domain hosted a website displaying infringing

11  marks, and that the domain was hosted by "an account paid for by [Usman] Anis, and

12  registered to the Fremont Address"; plaintiff further alleges that the domain resolved to an

13  IP address registered to Usman Anis at the Fremont Address.  Id. ¶¶ 30–32.  Plaintiff's

14  complaint is sufficient to allege a claim for trademark infringement against Usman Anis

15  under Rule 8.

16      Plaintiff alleges that SVG shares a physical address and phone number[2] with a

17  number of allegedly-infringing domains and that SVG's website was registered by the

18  same account that registered certain allegedly-infringing domains.  Compl. ¶¶ 33, 37–38.

19  Although plaintiff pleads SVG's actions with less particularity than it does Usman Anis's,

20  the complaint as a whole—including the credible allegations that defendants are

21  attempting to use technical means to mask their identities online—allow the court to draw

22  the reasonable inference that defendant SVG, whose contact information is attached to

23  many of the allegedly-infringing materials, is liable for the misconduct alleged.

24      Plaintiff also makes sufficient allegations to establish "use in commerce."  The

25

26  _____

27  [2] Defendants' briefing contests this point, but no cited declaration controverts plaintiff's
    allegation.  Dkt. 39 at 5:8–10 (citing a declaration of Usman Anis, Dkt. 26-1).  Notably,
    Usman Anis's declaration does not deny that the alleged number is associated with SVG.

28  Rather, the declaration attaches a printout of a Yelp webpage that shows another number
    associated with the business.

United States District Court
Northern District of California

domain registrations alone are sufficient.  Even if they are not, plaintiff alleges that defendants included images confusingly similar to their registered marks on websites and in email communications advertising services in direct competition with plaintiff's own services.

Defendants Usman Anis's and SVG's motion to dismiss plaintiff's trademark infringement claim is therefore DENIED.

### 2. False Designation of Origin, 15 U.S.C. § 1125(a)

The same standard is embodied in 15 U.S.C. § 1125(a), which applies to both registered and unregistered trademarks, and 15 U.S.C. § 1114, which provides protection only to registered marks.  Brookfield Communications, Inc. v. W. Coast Entertainment Corp., 174 F. 3d 1036, 1046 nn.6 & 8 (9th Cir. 1999).

For the reasons stated above, defendants Usman Anis's and SVG's motion to dismiss plaintiff's false designation of origin claim is therefore DENIED.

### 3. Trademark Dilution, 15 U.S.C. § 1125(c)

"In order to prove a violation of the Federal Trademark Dilution Act, a plaintiff must show that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services."  Panavision Int'l, L.P., 141 F.3d at 1324 (citing 15 U.S.C. § 1125(c)).

Defendant only challenges whether plaintiff's complaint "make[s] any allegation that [Usman] Anis or SVG is making commercial use of the Marks in commerce."  Dkt. 30 at 13.

GoDaddy alleges that its marks are famous, and identifies the marks with particularity.  Compl. ¶¶ 21–22, 74.  The complaint alleges that SVG and Usman Anis are making commercial use of the marks by:  displaying the marks on particular domains to siphon traffic from GoDaddy's websites by operating websites confusingly related to GoDaddy (id. ¶ 23); registering domain names that are themselves confusingly similar to

United States District Court
Northern District of California

United States District Court
Northern District of California

the marks (id.); making public communications purporting to be related to GoDaddy (id. ¶¶ 30–31, 40); funding certain of the accounts at issue (id. ¶¶ 27, 32–33); and purporting to represent a relationship between GoDaddy and defendants using SVG's phone number, Usman Anis's Sunnyvale Address, and a domain allegedly registered and paid for by Usman Anis via his GoDaddy account (id. ¶¶ 29–33).  Given the allegations pled and the allegation that defendants are actively concealing the true name or identify of the owners of the Infringing Domains, the court can draw a reasonable inference that Usman Anis and SVG are responsible for the alleged commercial use of the GoDaddy marks. Plaintiff also adequately pleads that defendants' alleged acts are confusing to customers, and they harass and annoy customers in a way that dilutes GoDaddy's marks.

Defendants Usman Anis's and SVG's motion to dismiss plaintiff's trademark dilution claim is therefore DENIED.

### 4.    Cybersquatting, 15 U.S.C. § 1125(d)

"The Anti–Cybersquatting Consumer Protection Act establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'"  DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (citing 15 U.S.C. § 1125(d)(1)(A)).  The Ninth Circuit has described cybersquatting as "when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder."  Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672, 680 (9th Cir. 2005) (quoting DaimlerChrysler v. The Net Inc., 388 F.3d 201, 204 (6th Cir. 2004)).

GoDaddy alleges that defendants Usman Anis and SVG "registered, trafficked in, or used" certain domains (Compl. ¶¶ 23–27, 32–33); that such domains contain or are confusingly similar to GoDaddy's protected marks (id. ¶¶ 23, 30–31); and that defendants

14

United States District Court
Northern District of California

1  acted with bad faith intent to profit from the trademarks (id. ¶¶ 23–25, 30–31, 87).

2       Defendants Usman Anis's and SVG's motion to dismiss plaintiff's cybersquatting

3  claim is therefore DENIED.

4       **5.    Unfair Competition, Cal. Bus & Prof. Code § 17200**

5       A claim under § 17200 can be founded on the same conduct underlying a Lanham

6  Act claim.  Cleary v. News Corp., 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit

7  has consistently held that state common law claims of unfair competition and actions

8  pursuant to California Business and Professions Code § 17200 are 'substantially

9  congruent' to claims made under the Lanham Act.").  The law also encompasses

10 practices that are unfair even if not specifically proscribed by some other law.  Cel-Tech

11 Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) ("The

12 statutory language referring to 'any unlawful, unfair *or* fraudulent' practice (italics added)

13 makes clear that a practice may be deemed unfair even if not specifically proscribed by

14 some other law. . . .  In other words, a practice is prohibited as 'unfair' or 'deceptive' even

15 if not 'unlawful' and vice versa.") (citations and internal quotation marks omitted).

16      The parties agree that this claim survives if plaintiff's trademark infringement claim

17 survives.  Dkt. 30 at 14–15; Dkt. 39 at 5; Dkt. 36 at 14–15.  The court agrees.

18      Defendants Usman Anis's and SVG's motion to dismiss plaintiff's unfair

19 competition claim under §17200 is therefore DENIED.

20      **6.    False Advertising, Cal. Bus. & Prof. Code § 17500**

21      "California's False Advertising Law makes it unlawful for any person to 'induce the

22 public to enter into any obligation' based on a statement that is 'untrue or misleading, and

23 which is known, or which by the exercise of reasonable care should be known, to be

24 untrue or misleading.'"  Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1161 (9th Cir.

25 2012) (quoting Cal. Bus. & Prof. Code § 17500).  "Whether an advertisement is

26 'misleading' must be judged by the effect it would have on a reasonable consumer. . . .

27 In applying this test, we are mindful that whether a business practice is deceptive will

28 usually be a question of fact not appropriate for decision on a motion to dismiss."  Id. at

1161–62 (citations and internal quotation marks omitted).

Plaintiff sufficiently alleges—at least—false statements of fact regarding an association with GoDaddy.  Compl. ¶¶ 30–31, 40.  Defendants Usman Anis's and SVG's motion to dismiss plaintiff's false advertising claim under §17500 is therefore DENIED.

### 7. California Common Law Trademark Infringement

The parties agree this claim survives or fails for the same reasons as plaintiff's trademark infringement claim, addressed above, as it requires proof of the same elements.  Dkt. 30 at 16; Dkt. 36 at 16; Dkt. 39 at 5.  The court agrees.  Defendants Usman Anis's and SVG's motion to dismiss plaintiff's common law trademark infringement claim is therefore DENIED.

### 8. Intentional Interference With Prospective Economic Advantage

The elements of intentional interference with prospective economic advantage are "(1) an economic relationship between the plaintiff and another, containing a probable future economic benefit or advantage to plaintiff, (2) defendant's knowledge of the existence of the relationship, (3) that defendant intentionally engaged in acts or conduct designed to interfere with or disrupt the relationship, (4) actual disruption, and (5) damage to the plaintiff as a result of defendant's acts." Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 380 n.1 (1995) (internal quotation marks omitted). The sixth element (6) requires "that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Id. at 393.

GoDaddy alleges that it provides domain name registration services (Compl. ¶¶ 18–19), and services to facilitate the use of those domains once registered, like web design and search optimization (id. ¶ 20).  GoDaddy alleges that defendants solicit business only for the second category of services.  Id. ¶¶ 3–4.

The first element of the claim requires pleading "an existing economic relationship or one 'containing the probability of future economic benefit.'" Transcription Commc'ns Corp. v. John Muir Health, 2009 WL 666943, at *10 (N.D. Cal. Mar. 13, 2009) (quoting

United States District Court
Northern District of California

AccuImage Diagnostics Corp v. Terarecon, Inc., 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003)).  "California state law requires 'proof that it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference.'" Id. (quoting Youst v. Longo, 43 Cal. 3d 64, 71 (1987)); Youst, 43 Cal. 3d at 72 (plaintiff must "show a probability of the prospective advantage, that is, that plaintiff would have benefited economically but for the interference").

GoDaddy likely adequately pleads that it has existing or probable economic relationships for domain name registration services.  For example, it describes its response to spamming campaigns, where it wrote that "GoDaddy has neither provided nor shared any customer data with [the spammers].  Instead, they pulled contact information from the public WHOIS database."  Compl. ¶ 34.  That public WHOIS information would relate to registration services, but not GoDaddy's other services.  See, e.g., id., Ex. R.  Plaintiff elsewhere refers to spam emails sent to "GoDaddy customers," although it does not specify the GoDaddy services those customers contracted for.  Id. ¶ 39.  However, GoDaddy does not identify any contracts it has, or other reasons to anticipate economic advantage, relating to any services other than domain registration—including with respect to any services that compete with defendants.

The second element requires GoDaddy to plead "knowledge by the defendant of the relationship with which the interference occurred."  Transcription Commc'ns Corp., 2009 WL 666943, at *10.  The Ninth Circuit has stated that "[w]hen the defendant performs the act that causes the interference, the defendant need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship."  Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1092 (9th Cir. 2005).  In holding the same, the California Supreme Court relied upon the Restatement Second of Torts:  "conduct must be intended to affect the contract of a specific person.  It is not enough that one has been prevented from obtaining performance of a contract as a result of the actor's conduct. . . .  Only when the actor's conduct is intended to affect a specific person is the actor subject to liability under this rule."  Ramona Manor Convalescent

Hosp. v. Care Enterprises, 177 Cal. App. 3d 1120, 1133 (1986) (citing Rest. 2d Torts, § 766, com. p). In Ramona Manor Convalescent Hosp., an action "made with the knowledge that such action would frustrate the legitimate contractual expectations of a specific, albeit unnamed" person was sufficient to incur liability. In sum, the defendant must know of a specific contractual subject matter that would be interfered with, although it need not know who specifically will be harmed by its interference with that relationship. See, e.g., id.; Sebastian Int'l, Inc. v. Russolillo, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001) ("If a potential defendant was completely unaware of contractual relations with a third party, then it would be impossible to infer any intent to interfere on the defendant's part. However, such intent can certainly be inferred if the defendant knows that contractual relations with a third party exist, but does not know the specific identity of the contractual party.").

Plaintiff alleges that defendants knew of GoDaddy's relationships with customers for domain registration services through querying the public WHOIS database. Compl. ¶ 34, Ex. R. GoDaddy fails to allege that any defendant knew of contracts or other "reasonably probable" prospective economic relationships for other services.

The third element requires GoDaddy to plead "acts by defendant designed to disrupt the relationship." Transcription Commc'ns Corp., 2009 WL 666943, at *11 (quoting Accuimage Diagnostics Corp., 260 F. Supp. 2d at 956). "California law clearly establishes an intent requirement for this element." Id. (citing Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003)). Substantial certainty is an alternative to pleading intent—"a plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." Id.

GoDaddy argues that its complaint "is replete with allegations of intentional acts performed by all Defendants to disrupt GoDaddy's relationship with its customers." Dkt. 36 at 17. But "intentional acts" is not the standard. California requires either specific intent or "knowledge that its actions were certain or substantially certain to interfere with

plaintiff's business expectancy." <u>Korea Supply Co.</u>, 29 Cal. 4th at 1166.  Regarding GoDaddy's domain registration services, GoDaddy does not allege and the complaint does not lead to a reasonable inference that defendants had the intent or knowledge that their actions would interfere with those contracts.  Regarding GoDaddy's website design services—assuming GoDaddy were to adequately allege probable future economic benefit from them—GoDaddy's allegations satisfy this element.  Specifically, GoDaddy alleges that defendants' agents represented to customers that they were a subsidiary of GoDaddy.  That intentional act makes it sufficiently clear that defendants knew they were soliciting customers who were seeking to contract with GoDaddy.

The fourth and fifth elements require plaintiff to plead "actual disruption" and "damages proximately caused by the acts of the defendant." <u>Accuimage Diagnostics Corp.</u>, 260 F. Supp. 2d at 956.  For the closely related tort of interference with contract, the California Supreme Court permits "liability where the defendant does not literally induce a breach of contract, but makes plaintiff's performance of the contract 'more expensive or burdensome[.]'" <u>Ramona Manor Convalescent Hosp.</u>, 177 Cal. App. 3d at 1131.  Plaintiffs can offer credible evidence that defendants' intentional actions resulted in greater expense or burden on the performance of its contractual obligations with third parties. <u>Sebastian Int'l, Inc.</u>, 162 F. Supp. 2d at 1205.

GoDaddy's complaint describes in some detail the adverse impact defendants' actions have had on its relationships with customers, although it is unclear what services these customers obtained or sought from GoDaddy.  Compl. ¶¶ 34, 46–47, 50–51.

Sixth, plaintiff must allege that defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." <u>Della Penna</u>, 11 Cal. 4th at 393.  Given the other related causes of action, GoDaddy satisfies this element.

Put simply, GoDaddy does not identify any particular prospective economic relationship that defendants knew about and actually disrupted.  Plaintiff instead alleges general reputational harm, unmoored from disrupted relationships regarding the types of services defendants offer.  GoDaddy confirmed at oral argument that its claim is based

on defendants' interference with GoDaddy's services other than domain registration; but GoDaddy does not allege that it lost (or even has) any particular relationships for services that defendants provide, much less ones that defendants knew of or actually interfered with.

Defendants Usman Anis's and SVG's motion to dismiss plaintiff's intentional interference with prospective economic advantage claim is therefore GRANTED WITH LEAVE TO AMEND.

### 9.    Accounting

An accounting is supported when any of the following conditions are met in a Lanham Act claim:  "if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if the accounting is necessary to deter a willful infringer from doing so again."  George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992) (citations and internal quotation marks omitted).  Taking plaintiff's pleadings as true, the complaint satisfies each of the three justifications for an accounting.

Defendants Usman Anis's and SVG's motion to dismiss plaintiff's request for an accounting is therefore DENIED.

### 10.    Injunctive Relief

Defendants move to court to dismiss "Plaintiff's claim for injunctive relief" because it "is not an independent cause of action."  Dkt. 30 at 19.  The court understands plaintiff's complaint to seek injunctive relief as a remedy, not as a cause of action.  Compl. at 41:18–42:15.  Defendants Usman Anis's and SVG's motion to dismiss plaintiff's claim for injunctive relief is therefore DENIED AS MOOT.

Defendants' accompanying request for judicial notice (Dkt. 31) is also DENIED.  Defendants request the court take judicial notice of a document pursuant to Federal Rule of Evidence 201.  Dkt. 31.  Defendants describe the exhibit as a printout from the California Secretary of State website that would show one of the entities plaintiff alleges defendants control, AppDesignAgency, LLC, is in "suspended" status.  However, no

1    exhibit was attached to its submission, nor did counsel bring a copy of the document to

2    the hearing.  The request is to "take judicial notice of the following documents attached

3    as Exhibit 1."  Because there is no such document, the request is DENIED AS MOOT.

4    **D.    Motion to Strike**

5         Defendants move to strike certain portions of and exhibits to plaintiff's complaint.

6    Dkt. 30 at 19–24.  Rule 12(f) provides that the "court may strike from a pleading an

7    insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

8    Fed. R. Civ. P. 12.  The function of a motion to strike is to "avoid the expenditure of time

9    and money that must arise from litigating spurious issues by dispensing with those issues

10   prior to trial."  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010)

11   (citation and internal quotation marks omitted).  To determine whether to grant a motion

12   to strike under Rule 12(f), the court considers whether the matter the moving party seeks

13   to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial;

14   (4) impertinent; or (5) scandalous.  Id. at 973–74.

15        Motions to strike are not favored and "should not be granted unless it is clear that

16   the matter to be stricken could have no possible bearing on the subject matter of the

17   litigation."  Colaprico v. Sun Microsystem, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

18   When a court considers a motion to strike, it "must view the pleadings in a light most

19   favorable to the pleading party."  In re 2TheMart.com, Inc. Sec. Litig., 114 F Supp. 2d

20   955, 965 (C.D. Cal. 2000).  A court must deny the motion to strike if there is any doubt

21   whether the allegations in the pleadings might be relevant in the action.  Id.

22        The materials defendants seek to strike could possibly have a bearing on the

23   subject matter of the litigation.  The portions defendants seek to strike are background

24   materials, particularly when read in light of the conduct alleged throughout the complaint.

25   Defendants Usman Anis's and SVG's motion to strike is therefore DENIED.

26   **E.    Preliminary Injunction**

27        Federal Rule of Civil Procedure 65 provides federal courts with the authority to

28   issue temporary restraining orders and preliminary injunctions.  Fed. R. Civ. P. 65(a)–(b).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Generally, the purpose of a preliminary injunction is to preserve the status quo and the

2   rights of the parties until a final judgment on the merits can be rendered.  See U.S.

3   Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010).

4       A plaintiff seeking a preliminary injunction can satisfy either of two tests.  His first

5   option is to establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer

6   irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his

7   favor; and (4) an injunction is in the public interest.  Winter v. Nat. Res. Def. Council, Inc.,

8   555 U.S. 7, 20 (2008).

9       Alternatively, the plaintiff's second option is to show that (1) "serious questions

10  going to the merits were raised"; (2) "the balance of hardships tips sharply in the plaintiff's

11  favor"; (3) "there is a likelihood of irreparable injury"; and (4) "the injunction is in the public

12  interest."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

13  This is sometimes referred to as the "sliding scale approach."  Showing "serious

14  questions going to the merits" requires a plaintiff to demonstrate a "substantial case for

15  relief on the merits."  Leiva-Perez v. Holder, 640 F.3d 962, 967 (9th Cir. 2011).  A

16  "serious question" is one on which the plaintiff "has a fair chance of success on the

17  merits."  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir.

18  1984).

19      GoDaddy's complaint is long and detailed, and its preliminary injunction motion

20  and accompanying declarations establish sufficient evidence to support a preliminary

21  injunction.  Although GoDaddy has presented substantially more evidence about a

22  number of Usman Anis's and SVG's activities, the court summarizes some of the relevant

23  information regarding g0daddydesigns.com in particular:

24      • The domain has been registered to Fredrick King (Dkt. 37-2 ¶ 44; Dkt. 37-1

25          ¶ 17) and hosted by Usman Anis (Dkt. 37-1 ¶ 18, Ex. F).

26      • Usman Anis has paid for the domain.  Dkt. 37-2 ¶ 40; Dkt. 37-1 ¶¶ 14 & 16,

27          Exs. C & E.

28      • The domain is tied to both the Fremont Address (Dkt. 37-2 ¶ 44; Dkt. 37-1

¶¶ 14 & 16, Exs. C & E) and the Sunnyvale Address (Dkt. 37-1, Ex. B).

- The domain is tied to a commonly-used phone number, 800-589-2951.  Dkt. 37-1, Ex. B.

- The domain has been the source of customer spam or confusing emails to customers.  Dkt. 37-1, Ex. B.

- A customer has contacted GoDaddy regarding confusing emails sent from the domain.  Dkt. 37-1 ¶ 13, Ex. B.

**1.     Likelihood of Success or Serious Questions Going to the Merits**

Defendants did not dispute in their papers or at oral argument that GoDaddy is likely to succeed on the merits against some defendant; they instead argue that GoDaddy is unlikely to succeed on the merits against these particular defendants.  Much of plaintiff's motion is dedicated to explicating its factual investigation into the ownership and interrelated control of the Infringing Domains.  Dkt. 37 at 4–10.

Plaintiff has shown serious questions going to the merits given:  (1) regarding the substantive law, it is undisputed that plaintiff is likely to succeed on the merits against the correct defendant; (2) plaintiff has demonstrated competent evidence demonstrating Usman Anis has registered or owns certain of the Infringing Domains; and (3) plaintiff has proffered evidence demonstrating a likelihood that many more of the domains at issue are part of a common plan or scheme with the domains tied to Usman Anis and SVG.

**2.     Balance of Hardships**

Under the "sliding scale" approach, plaintiff must show that the balance of hardships tips sharply in its favor if it only shows "serious questions going to the merits" rather than a likelihood of success on the merits.

Defendants cannot claim any hardship from an injunction that would prevent them from using GoDaddy's trademarks, especially considering they have no current right to do so (they do not allege to have a contractual right or any other right).  In fact, defendants deny any participation in the alleged infringing activities at all.  GoDaddy, however, faces strong, cognizable hardship.  As discussed in the irreparable harm

United States District Court
Northern District of California

analysis below, GoDaddy is suffering ongoing reputational harm, loss of goodwill, and loss of control over their federally-protected marks.

### 3. Irreparable Harm

Reputational harm and loss of goodwill can constitute irreparable harm.  11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed. 1998) ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.") (collecting cases); American Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046 (9th Cir. 2009) (potential loss of customer goodwill); Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001) (evidence of loss of customer goodwill supports finding of irreparable harm).

The district court must base a finding of likelihood if irreparable harm on evidence in the record.  In the Ninth Circuit, an employee declaration "reporting numerous and persistent complaints from would-be customers who received robo-calls for what they believed were [plaintiff's] products" and "emails and social media posts from consumers" is sufficient to support a finding of a threat to plaintiff's "reputation and goodwill."  Life Alert Emergency Response, Inc. v. LifeWatch, Inc., 601 F. App'x 469, 473–74 (9th Cir. 2015).  Because reputational harm and loss of goodwill "constitutes irreparable harm, as it is not readily compensable," such a showing is sufficient to establish irreparable harm for a preliminary injunction.  Id.

Plaintiff has made the necessary showing.  Plaintiff has submitted a declaration attesting that GoDaddy has received numerous customer complaints in response to communications originating from domains at issue in this case.  Dkt. 37 at 20 (citing Becerra Decl. ¶¶ 34–43, Exs. O–S).

### 4. Balance of Equities

The balance of the equities favors GoDaddy.  Contrary to defendants' arguments, GoDaddy's size does not preclude it from suffering irreparable reputational harm. Furthermore, the ongoing infringing use of GoDaddy's trademarks to promote deceptive

24

1   and annoying business practices is causing real, public harm to GoDaddy.

2   Defendants respond by denying the allegations, so an injunction would not prevent them

3   from any ongoing legitimate business practice.  Second, to the extent they are using

4   GoDaddy's trademarks, an injunction preventing them from continuing illegal activities is

5   not inequitable.  Defendants expressed concern at oral argument that the injunction

6   would be enforced against them even if they did not violate it; that concern is not

7   sufficient to tip the balance of equities against GoDaddy.

8        **5.**     **Public Interest**

9        The public has a strong interest in protecting trademarks.  If plaintiff's allegations

10  are true, defendants are serial infringers who have so far evaded attempts to police their

11  infringing conduct by pleading ignorance.  It is in the public's interest to stop the conduct.

12  It is against the public's interest to enjoin a party from infringing trademarks when he has

13  not in fact been infringing them, but a narrowly-tailored injunction can ease that concern

14  by enjoining only illegal conduct.

15       Plaintiff's motion for a preliminary injunction is therefore GRANTED with respect to

16  defendants Usman Anis and SVG, in accordance with the terms specified below.  The

17  court's ruling is DEFERRED with respect to Salman Ghaznavi, which will be determined

18  on the papers submitted by the parties concerning personal jurisdiction.

19  **F.**     **Evidentiary Objections**

20       Plaintiff and defendants Usman Anis and SVG have filed a number of evidentiary

21  objections and materials related to evidentiary objections.

22       First, Local Rule 7-3(a) governs opposition briefs and provides, in relevant part:

23  "Any evidentiary and procedural objections to the motion must be contained within the

24  brief or memorandum. Pursuant to Civil L.R. 7-4(b), such brief or memorandum may not

25  exceed 25 pages of text."  Rules 7-3(c) & (d) govern replies and supplementary

26  materials, respectively.  Courts in this district regularly strike separately-filed evidentiary

27  objections and responses for violating Local Rule 7-3. Hennighan v. Insphere Ins. Sols.,

28  Inc., 38 F. Supp. 3d 1083, 1095 (N.D. Cal. 2014), aff'd, 650 F. App'x 500 (9th Cir. 2016);

Beauperthuy v. 24 Hour Fitness USA, Inc., 772 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011);

see also Coleman v. Kaiser Permanente, No. 12-CV-02668-JST, 2014 WL 2886293, at

*3 (N.D. Cal. June 25, 2014); Ashley v. City & Cty. of San Francisco, No. 12-CV-00045-

JST, 2014 WL 4627736, at *14 (N.D. Cal. Feb. 4, 2014).

Second, "the Federal Rules of Evidence do not strictly apply to preliminary

injunction proceedings." Disney Enterprises, Inc. v. VidAngel, Inc., 224 F. Supp. 3d 957,

966 (C.D. Cal. 2016), aff'd, 869 F.3d 848 (9th Cir. 2017) (citing Republic of the

Philippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc)); Herb Reed

Enterprises, LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1250 n.5 (9th Cir. 2013);

Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11C Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (1973)). For example,

a district court may "consider hearsay in deciding whether to issue a preliminary

injunction." Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009) (citations omitted).

"While district courts may consider inadmissible evidence in the context of a preliminary

injunction, this does not mean that evidentiary issues have no relevance to this

proceeding. Such issues, however, properly go to weight rather than admissibility."

Disney Enterprises, 224 F. Supp. 3d at 966 (citation omitted); 11A Charles Alan Wright &

Arthur R. Miller, Federal Practice and Procedure § 2949 (3d ed. 1998).

Accordingly, the parties' separate filings concerning evidentiary objections (Dkts.

41, 42, 46, 47 & 48) violate Civil Local rule 7-3 and are hereby STRICKEN.[3] Plaintiff's

evidentiary objections to Usman Anis's declaration (Dkt. 48 at 3; Dkt. 51 at 15) are

OVERRULED. In light of the relaxed evidentiary standard for preliminary injunction

proceedings, the court need not rule on admissibility; the court has considered the likely

admissibility of the evidence when assessing whether to order the preliminary injunction.

See Disney Enterprises, 224 F. Supp. 3d at 966 n.1.

---

[3] Even if the objections were not stricken, the court need not rule on admissibility given that "the Federal Rules of Evidence do not strictly apply to preliminary injunction proceedings." Disney Enterprises, Inc., 224 F. Supp. 3d at 966.

United States District Court
Northern District of California

**G.     PRELIMINARY INJUNCTIVE RELIEF**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED that:

1. Defendants Usman Anis and SVG, as well as their officers, agents, servants, employees, members, and managers, are enjoined from the following:

   a. Advertising, marketing, distributing, selling, sending emails, text messages, making phone calls, or publishing, including the publication of any webpage or electronic media, any materials bearing a GoDaddy trademark or any similar representations or renderings of GoDaddy trademarks, including any kind of distribution on any social media displaying any GoDaddy trademark, or similar representations or renderings thereof;

   b. Operating, registering, continuing to use, continuing to display GoDaddy trademarks upon, siphoning traffic from, generating sales, leads, or internet traffic from, or otherwise continuing to utilize in any manner, any domain containing the words "go" and "daddy," or domains using a combination of characters creating a confusingly similar display, for example containing "g0" rather than "go";

   c. Destroying, moving, concealing, transferring, damaging, or failing to preserve any data, media, documents, materials, or information of any kind that contains any representation or information related to GoDaddy trademarks;

   d. Concealing, altering, injuring, destroying, or failing to preserve in their present form, corporate books and records, including any and all financial records related to any use, misuse, or reference to any GoDaddy trademarks including, but not limited to, any and all sales made in connection with or reference to GoDaddy trademarks;

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IT IS FURTHER ORDERED that pursuant to Rule 65(c), Plaintiff shall by March 23, 2018, post a bond in the total amount of $5,000 as a condition to entry of this preliminary injunction.

**IT IS SO ORDERED.**

Dated:  February 28, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge